HENRY CARLISLE *v.* W. R. GUNN.

1. ATTACHMENT. *Affidavit; not sworn to. Amendment. Practice.*
    A creditor asked a justice of the peace to prepare papers for an attachment against his debtor, telling him the amount of the debt, and the grounds of attachment; and the justice wrote an affidavit, bond and writ, and handed them to him, asking "if that was all right," and the creditor answered that it was. The affidavit was not signed, and no oath was administered or attempted to be administered. *Held,* there was no affidavit, and the levy based thereon was invalid, and no subsequent amendment could validate the proceedings so as to affect intervening rights.

2. SAME. *Affidavit; what constitutes. Mere intention not sufficient.*
    Whether said paper, in form an affidavit, is really one is not determinable by what either of the parties *considered* in reference to it, but by the inquiry whether anything was done which could properly be construed the taking or administering an oath.

FROM the chancery court of Monroe county.

R. C. BECKETT, ESQ., Special Chancellor by consent.

In March, 1888, Gattman & Co. failed, and numerous attachments were sued out against them, among others attachments in favor of appellant Carlisle and appellee Gunn. The latter, through his agent, procured an attachment in Chickasaw county which was levied on the land in controversy, situated in that county. He also prosecuted an attachment on the same debt in Monroe county; and the writ was levied on property there. Subsequently appellant, having obtained an attachment in Monroe county, caused a branch writ to issue to Chickasaw county, and had the same levied on the land previously levied upon by appellee, and which, meantime, had been levied on by others.

Before a disposition of the attachment suits against Gattman & Co., all the attaching creditors united in a creditors' bill in the chancery court of Monroe county, seeking to set aside the assignment which Gattman & Co. had made of all their assets. This suit was finally compromised, and a consent decree was entered. Pending the compromise, a controversy having arisen between the creditors who had attached the above-mentioned land, as to the priority of their respective liens, this question was, by express provision in the decree, reserved for future adjudication. The clause of the decree containing this provision will be found quoted in the opinion.

Pursuant to the consent decree, the appellee, Gunn, proceeded to take judgment in his attachment suit in Monroe county. Defendants moved to quash the writ of attachment in the suit in Chickasaw county, alleging that there was no affidavit, and that what purported to be an affidavit, was never, in fact, sworn to by Gunn or his agent. Evidence was taken on the hearing of this motion, and the facts in that connection, as deduced by the court from the record, are set out in the opinion. The circuit court refused to disturb the levy, but required plaintiff to file an amended affidavit, which was done, and the cause proceeded to judgment.

The question of the priorities between the creditors having levies upon the land in Chickasaw county having been referred to the chancery court of Monroe county, as provided in the decree, this controversy has arisen between Carlisle and Gunn, the former making the same objection previously made by him to the attachment writ of Gunn, viz., that there had been no valid affidavit; and that the amendment made subsequent to the levy by Carlisle could not validate the writ and levy previously made. It is not deemed necessary to state the other points presented by counsel.

The decree of the court was in favor of Gunn, giving to his lien priority over that of Carlisle, and from this decree the latter appeals.

*Sykes & Richardson,* for appellant.

The rights of attaching creditors as between themselves must

depend on strict law, and if one by want of regularity or diligence loses his priority, no equitable principle can afford him relief. Drake on Attach. § 262.

There can be no valid attachment without an affidavit being made. Ib. § 84. No amendment can supply the entire omission of an affidavit. An amendment presupposes the existence of an affidavit. 2 Douglass, 498; 8 Humph. 12; 1 Wade on Attach. §§ 73, 237.

The testimony fails to show the making of an affidavit. It is essential that the oath be administered. It takes two to make an affidavit, the officer and the affiant. The cases relied on by appellee are not those where the oath was not administered but where the affidavit was made but the affiant or officer failed to affix his name. This case lacks the requisites, which in *Dunlap* v. *Clay,* 65 Miss. 454, the court said were necessary to constitute an oath, viz., the *consensus* of the minds of officer and affiant, and a sufficiently formal administration of the oath.

The amendment could not affect the lien of Carlisle. While amendments may be made as between debtor and creditor, they cannot affect adversely other creditors. In a case like this, the lien of senior attacher is postponed to that of the junior. 2 Duvall, 288; 15 Wis. 61; 1 Wade on Attach. §§ 72, 73, 287; Drake on Attach. §§ 113, 262.

*Miller & Baskin* and *W. T. Houston,* for appellee.

The amendment of the affidavit was proper and the new affidavit was as valid in all respects as if given at the commencement of the suit. Code 1880, § 2464. The cases cited by appellant are not applicable, especially under such a comprehensive statute as ours. In 2 Douglass (Mich.), 187, there was no affidavit before an officer qualified to administer an oath, nor was there any statute of Michigan authorizing amendment in such a case. In 8 Humph. 12, there was no attempt to file any sort of affidavit.

The consequences of a defect in the affidavit must depend on the character of the defect and altogether upon the statute of the state. 1 Wade on Attach. §§ 73, 237.

It is clear that under our statute the affidavit was not void, but only voidable. It contains the name of the parties, the amount of the debt, and the grounds of attachment. See *Booth* v. *Rees*, 26 Ill. 45. A subsequent attaching creditor is not entitled to the same latitude of objection as the defendant in attachment. *Ward* v. *Howard*, 12 Ohio St. 161.

In support of the sufficiency of the affidavit and the effect of the amendment, see 30 Iowa, 452; 12 Robinson (La.), 132; 79 Ill. 233; 26 Ib. 46; 3 Scam. (Ill.) 361; *Dunlap* v. *Clay*, 65 Miss. 454; *Redus* v. *Wofford*, 4 S. & M. 579; *Brooks* v. *Snead*, 50 Miss. 416; *Green* v. *Boon*, 57 Ib. 617; 1 Wade on Attach. 73; Drake on Attach. § 91.

The justice of the peace cannot impeach his official act. *Stone* v. *Montgomery*, 35 Miss. 83; *Word* v. *Sykes*, 61 Ib. 649.

*Clifton & Eckford*, on the same side, filed a lengthy brief and written argument, reviewing the authorities above noted in the brief of associate counsel, and making the following additional points and citations on the questions passed on in the opinion. The facts clearly amounted to the making of an affidavit, and if not, it was subject to amendment. *Boisseau* v. *Kahn*, 62 Miss. 757.

In the authorities relied on by appellant we submit that the word *defective* is taken in the sense of *void*, that is that the defects in an affidavit, which would let in intervening rights acquired before amendment, must be such as go to the jurisdiction, and render the proceeding void. Waples on Attach. 105; 15 Wis. 68; Wade on Attach. § 72; 2 Douglass (Mich.), 93; Drake on Attach. 143 (n. 1), 262 (n. 3), 273 (n. 2); 85 N. Y. 243.

A subsequent attaching creditor must show either that the affidavit is void or wholly fails to embody some jurisdictional fact, before the amendment can displace the prior lien. Drake on Attach. 184; Waples on Attach. 104; *Pennoyer* v. *Neff*, 95 U. S. 721; Wade on Attach. 413; Code 1880, § 2464.

The waiver made by Gattman & Co. in the consent decree must be held to be for the benefit of all attaching creditors. Carlisle was a party to the decree and profited by the agreement and

waiver, and since, Gattman & Co. cannot object to the validity of the attachment, Carlisle cannot.

*T. J. Buchanan,* on the same side.

Argued orally by *Chas. Richardson,* of counsel for appellant, and *T. J. Buchanan, Jr.,* of counsel for appellee.

WOODS, C. J., delivered the opinion of the court.

The position of the appellant in this case differs widely from that of the appellant in *Gattman* v. *Gunn,* determined at the October term, 1889, of this court. In that case, Gattman, by his own action, had put himself in position not to be heard in an attempt to defeat Gunn in his suit to reduce his claim to judgment, and that was the question which our opinion in that case settled.

In the case at bar, Carlisle is not estopped by any act of his to deny the validity of the proceedings in the attachment suit of *Gunn* v. *Gattman,* in the Chickasaw county case. The consent decree entered in the chancery court of Monroe county, in schedule 6, contains these words, viz : " It appearing to the court that the land contained in this schedule is claimed to be levied upon by the writs in the attachment cases of W. R. Gunn, T. B. Sykes, executor, etc., John Trice & Co., Mrs. C. W. Clopton, Jno. C. Burdine, Charles Bearing and Henry Carlisle, and said creditors being unable to agree among themselves as to who is entitled to the proceeds of the sale of said lands, and which of said creditors have valid liens thereon ;

" It is, therefore, ordered that said lands be sold by the receiver, and that he convey to the purchaser thereof all the right, title and interest of all persons whomsoever claiming any interest therein, or a levy thereon, and that he hold the proceeds thereof until the further order of the court. And it is hereby ordered by the court that an issue be made up between the aforesaid parties claiming the proceeds of the sale of said land, by giving ten days' notice to others interested, either in term time or in vacation, to determine to whom the proceeds of the sale of said land shall be paid, from which decision either party reserves the right of appeal. That

nothing contained herein shall be held to be a waiver by any of said parties of any legal rights or advantages that they may have as against the others. The only waiver intended herein is that the land be sold and the proceeds held to await the result of said contest as to whom it shall be paid.

" The following is the land situated in Chickasaw county, Mississippi, to wit :" [Here the lands are described by proper legal sub-divisions, and the same are the lands involved in this controversy.]

No known processes of construction can be made to so interpret this language in schedule 6 as to place Carlisle in the position which Gattman occupied when he appeared to resist Gunn's effort to reduce his claims to judgment in Chickasaw county. As is well said by the admirable lawyer who heard and determined the present controversy in the court below : " This is the first appropriate proceeding in which this priority [the priority between conflicting attachers named in schedule 6] could be fixed." It is indisputable that Carlisle did precisely what the consent decree directed in instituting his proceeding in this behalf to determine who had the prior levy and lien in the Chickasaw attachment suits.

The controlling question, at present, is as to the amendment of the affidavit in Gunn's case, antecedent to the rendition of the judgment in attachment in his favor in the circuit court of Chickasaw. This amendment was in fact the filing of a new affidavit. What purported to be the original affidavit showed on its face that it was not sworn and subscribed on the day the bond was executed and the writ issued ; the affidavit was not signed by Gunn's agent, and the jurat was not signed by the officer who issued the writ, or by any other officer.

For the purpose of ascertaining whether an affidavit had been made, though informally or irregularly, evidence was offered, and from this evidence it appears that Gunn's agent went to Clopton, a justice of the peace, and asked that the papers be prepared for the issuance of an attachment in favor of Gunn against the estate of Gattman, the agent stating to the officer the amount of Gunn's demand and the grounds on which he wished the attachment taken.

The officer hurriedly prepared the affidavit, writ and bond, and, handing them to Gunn's agent, asked "if that was what he wanted; if it was all right." To which the agent of Gunn replied: "Yes; that it was all right." If there was any affidavit made, it was made in the manner just narrated. Gunn's agent testified that he considered that what had been detailed was swearing to the affidavit, and the magistrate testified that he was positive that no oath was administered and no attempt to make an oath was made, though he may have asked Gunn's agent if the papers were all right and what he wanted.

This statement of the facts in evidence shows the case to be wholly unlike any of the cases referred to by counsel, in our own reports and elsewhere. It is not the omission of something that should have been inserted in the body of the affidavit; it is not the failure of the affiant to subscribe his name; nor is it the want of the officer's signature to the jurat. It is not a question of an allowable amendment to a defective affidavit, or an attempted affidavit. It is a question of affidavit or no affidavit.

Can the circumstances referred to by us be regarded as the administration of an oath? Can it be said that the minds of the officer and Gunn's agent met in the act consciously, the magistrate administering and the agent taking the prescribed oath, and with that intent on the part of both? Was there anything done or said by both parties which could have been construed to be the making and taking of an oath by Gunn's agent? Was there the semblance of any form of speech or expression which can be held to have been a calling upon God to witness the truth of any statement made or about to be made by the agent of Gunn? Was there anything in the inquiry made by the magistrate and responded to by the agent on which any court would have sustained an indictment for perjury, if the grounds on which the attachment was based had turned out to be wilfully false?

The question is not determinable by what Gunn's agent "considered" he was doing. The question is what was done, not what *one* of the necessary parties to the administration and making of the oath "considered."

To us it seems plain that there was no affidavit made on the day of the issuance of the writ, and that there could be no amendment of an affidavit which, in fact, had never been made. It follows that Gunn's levy on the 19th of March, based upon the supposed affidavit of the 18th of March, was invalid as to any other subsequent and intervening attacher with a valid levy and lien regularly obtained.

We deem it unnecessary and improper to consider, on this appeal, the questions presented by counsel for appellee touching the proceedings had by Carlisle in his attachment. Those questions are not now before us.

*Reversed and remanded.*