Argued and submitted December 1, Accused suspended
for 60 days December 30, 1980

# In re: Complaint as to the Conduct of

## DONALD H. GREENE,
### *Accused.*

(No. 78-38, SC 27265)

620 P2d 1379

Thomas E. Cooney, of Cooney & Van Hoomissen, Portland, argued the cause and filed a brief for the accused.

Grant V. Mumpower, Portland, argued the cause for Oregon State Bar. With him on the brief was Ronald D. Thom, Oregon City.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson and Campbell, Justices.

PER CURIAM.

## PER CURIAM.

This disciplinary case involves Donald H. Greene, a member of the Oregon State Bar. Greene is charged with unethical conduct in connection with work performed in a conservatorship in which his then wife was the conservator of the estates of her two minor children from a previous marriage.

The Trial Board and the Disciplinary Review Board found Greene innocent of all charges except one. He was found guilty of this charge:

" * * * [T]he Accused, as attorney for the guardian, caused to be filed with the Probate Court on July 18, 1975 a guardian's petition for permission to sell securities of the guardianship estate and to use the proceeds to purchase real estate interests for the benefit of the wards.

"The Court routinely approved the sale of securities and purchase of real estate interests, which the Accused knew it would do, without disclosing to the Court that said investments were the purchase of two undivided one-quarter interests in the residence of the Accused and the guardian, husband and wife.

"III

"On October 13, 1975, the Accused, as attorney for the guardianship estate, petitioned the Court for authority to release frozen funds of the estate, with which to improve the real estate that had been previously purchased.

"The Court routinely approved said petition, which the Accused knew it would do, without disclosing to the Court that said 'improvements' were for the benefit of real property that the guardian and the Accused owned.

"* * * * *"[1]

The Trial Board recommended that Greene receive a public reprimand.[2] The Disciplinary Review Board recommended a 30-day suspension.

---

[1] The Bar's complaint contained seven counts. We agree that Greene is only guilty of the fourth count, quoted in the text. We therefore will discuss only the evidence pertaining to the fourth count.

[2] The Trial Board found:

"The trial board finds that Mr. Greene intentionally failed to inform the court of the nature of the real estate investment. * * * "

## THE FACTS

In 1964 Greene married Nancy Soderberg, a divorcee with two minor children. He never adopted the children. The children's natural father died in 1967, after which the children received Social Security funds, Veteran's Administration funds and, due to their father's Indian ancestry, considerable funds from the Bureau of Indian Affairs.

His wife was appointed as conservator[3] of the estates of her two minor children in 1967, and all legal services were thereafter performed by Greene without charge. Greene and his wife separated in the spring of 1975, and for a short time thereafter he continued to provide these legal services gratis. They were divorced in 1976.

In July, 1975, Greene prepared a petition for Mrs. Greene, as the conservator of the children's estate, requesting permission to invest conservatorship funds "in real estate."[4] The real estate involved was her home, owned by her,[5] and she intended to pay off the mortgage on the home (in which she and the children resided) with conservatorship funds. Greene did not advise the court that the investment by the conservator was in property the conservator individually owned. However, Greene prepared, and Mrs. Greene executed, deeds conveying to each child a one-quarter interest in the property.

---

[3] Prior to 1973 different statutory provisions existed for guardianships and conservatorships. Mrs. Greene was originally appointed as *guardian* of the estates of the two children. Because of amendments to the law in 1973 (1973 Or Laws, ch 823), she was called a *conservator.* Her responsibilities and duties did not change, nor did Greene's. The words *guardian* and *conservator,* as used herein, have the same meaning.

[4] The text of the petition reads as follows:

"COMES NOW Nancy L. Greene, the duly appointed, qualified and presently acting conservator of the above entitled conservatorship estate, and respectfully petitions the court for authority to have Certificate of Deposit no. 102051931 and savings account no. 102051958, both held at the Cedar Hills Branch of Equitable Savings and Loan Association released so that said funds may be invested in real estate.

"Petitioner believes and therefore alleges that said investment would be more advantageous to said minors, than to allow the funds to remain where they are presently invested."

[5] The Bar was mistaken when it alleged the property was owned by Greene.

In October, 1975, Greene prepared a petition requesting authority to expend conservatorship funds "to make capital improvements on the real property owned by said wards." The "capital improvements" were for the purchase of carpeting and wallpaper. In fact, the wards owned no more than a one-half interest in the real property.

## DISCUSSION

The evidence is without substantial dispute. Greene is an experienced lawyer who has practiced law since 1959. Prior to his admission he worked as a probate clerk in the Multnomah County Circuit Court. Prior to 1975 he had handled "several hundred" guardianships, either as a guardian or as an attorney for a guardian.

The two petitions involved in this case were apparently handled as follows. The petition was presented by Greene to the judge *ex parte,* either in open court or in chambers, or left with a probate clerk. Greene did not recall which method was followed, and there is no transcript of Greene's oral request, if any, for the court order. After the probate judge's verbal approval, the order was given to the judge for signature. Both orders bear the same date as the date the petitions were filed.

There is evidence that where court approval was requested involving conservatorship purchase of property owned individually by the conservator, the probate judge would carefully examine the matter. A probate clerk testified that if the *ex parte* motion had disclosed that the property was owned by the conservator, the judge "would not allow it."

Greene admitted that the July petition should have revealed the fact that the conservator was the owner of the property. He testified:

"Q  Now, the clerk testified that if a guardian is dealing with a ward, in some way a ward is going to be investing funds in some property or enterprise where the guardian is involved, 99% of the time those are prohibited. Would you tell this panel what your experience has been insofar as whether or not those things are precluded completely or whether the court is just primarily interested as to whether or not it's an arm's length fair transaction as far as the ward is concerned.

"* * * * *.

"THE WITNESS: I think Mr. Whitbeck is correct in what he said when it's a guardian dealing with the ward. However, I know there is a lot of exceptions in the case of a guardian dealing with a ward when they are related. Primarily, the court wants to know — in other words, the court wants to know what the value of the property is. In other words, the court isn't going to approve an investment that isn't going to be beneficial to the estate of the ward.

"BY MR. COONEY: (Continuing)

"Q But by not disclosing that to the court, you deprived the court that opportunity, but you had firsthand knowledge.

"A I had firsthand knowledge. I knew it was a humdinger of an investment."

■ We have held that any use of conservatorship funds for a conveyance, purchase, or sale by which the conservator derives a personal benefit is presumptively invalid and voidable. *Brown v. Hilleary,* 133 Or 26, 38, 286 P 593 (1930). Greene should have advised the court that the money was being used to acquire an interest in real property owned by the conservator.

Greene is charged with violating ORS 9.460(4) and DR 1-102(A)(4), (5) and (6).

ORS 9.460(4) provides:

"An attorney shall:
"* * * * * .

"(4) Employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never seek to mislead the court or jury by any artifice or false statement of law or fact."

DR 1-102(A)(4), (5) and (6) provide:

"(A) A lawyer shall not:
"* * * * *.

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"(5) Engage in conduct that is prejudicial to the administration of justice.

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

Greene's lawyer, in his argument to the Trial Board, stated:

"* * * Number one, when he filed that request for permission to have the guardian invest funds to the wards in the property that the guardian herself owned, he obviously should have disclosed to the court that that was a self-dealing type situation and, therefore, he should have done it. But not because it wouldn't have occurred, but because of the questions of safeguards of value and so forth and I think there is no evidence here that the investment when that was going on was in any way a poor financial investment. So faulting, if you will, insofar as not saying the extra words or disclosing to the court that this was — this is the wards' property regarding this property, but the purpose of that whole thing and make sure that it is fair dealing and he knew the value. It doesn't excuse his not doing it. He should have done it. But if all that had been done, you can rest assured that the court would have authorized it again. Nothing wrong with that particular investment.

"* * * * *.

"* * * I think the things that comes down here ultimately is that he's failed to disclose something of importance of the nature of investment regarding the property of the children, but the children weren't harmed. Violation of disclosure requirement, but it isn't anything so serious that requires drastic type punishment. * * *."

The issue is not whether the investment was good or bad, nor whether the court would have authorized it had the court been fully advised, nor whether harm ensued. The issue is whether the failure to advise the court violated ORS 9.460(4) or DR 1-102(A).

We view the violation of the disclosure requirements of ORS 9.460(4) and Dr 1-102(A)(4) as a serious matter, particularly in the context of an *ex parte* presentation to the judge. The evidence shows that neither the probate judge nor the probate clerks made much, if any, investigation into the merits of such requests. Our experience has been all judges regularly rely upon the candor, honesty and integrity of the lawyer in handling *ex parte* matters which are presented to them. Extremely important judicial decisions are often made in probate cases, injunction cases and domestic relations cases on *ex parte* application of lawyers. Judges must be able to rely upon the integrity of the lawyer.

■     A half-truth or silence can be as much a misrepresentation as a lie, *Heise v. Pilot Rock Lbr. Co.,* 222 Or 78, 90, 352 P2d 1072 (1960). In effect, the petitions here involved are half-truths, for they fail to advise the court of very important necessary information—that the property was owned by the conservator. The necessity for complete candor when dealing with the court, particularly in an *ex parte* context, cannot be overemphasized.

■     We find that Greene intentionally failed to advise the court that the property being purchased was then owned by the conservator. The more difficult question is whether such intentional failure to inform the probate court of the nature of the real estate investment arose because of Greene's ignorance of the necessity for such disclosure or was deliberate. We further find that the failure to properly advise the court was deliberate. Greene had worked as a probate clerk in this very court and he was aware of the need for disclosure to the court when the conservator was using conservatorship funds to deal with herself in her personal capacity. True, the estate suffered no loss, and the preparation of the deeds reflects Greene's insistence upon obtaining adequate security to protect the estate. But the failure to fully advise the court remains. We find that Greene violated ORS 9.460(4) and DR 1-102(A)(4),(5) and (6). His conduct is violative of ORS 9.460(4) because he employed means which were not consistent with truth. His conduct violates DR1-102(A)(4) because it constituted a misrepresentation which, in turn, "adversely reflects on his fitness to practice law" (DR 1-102(A)(6)) and "is prejudicial to the administration of justice" (DR 1-102(A)(5)).

Determination of the appropriate sanction remains. This was a difficult time for Greene. He and his then wife had separated earlier in 1975. Their problems were further complicated due to the serious mental problems of one of the children. Greene remained devoted to his wife and was attempting to assist her in handling her problems.

There is no evidence of any bad motive, either by Greene or the conservator. Greene stood to gain nothing by failing to fully disclose the necessary facts in the petitions.

There was no loss to either child. Though we find that the omission to advise the court was intentional, we do not find that he designed to gain any unfair advantage.

■       One of the purposes of proceedings such as these is to demonstrate to the public and the Bar that the obligation of a lawyer requires ethical conduct, and that the violation of such obligation is a serious matter. Greene should be, and is, suspended from the practice of law for 60 days.[6] Costs to the Oregon State Bar.

---

[6] In reaching this conclusion, we note that this is a "second offense." *See In re Greene,* 276 Or 1117, 557 P2d 644 (1976), *reh den* 277 Or 89 (1977), which involved misconduct in connection with the handling of a decedent's estate in 1973. The events here involved occurred in July of 1975. His trial on the earlier complaint was in April of 1975 and the Trial Board opinion was handed down late in 1975. It cannot be said that Greene was then definitely aware that his earlier conduct was unethical, and we therefore do not consider it in determining the appropriate sanction. Since that time, as we required in *Greene, supra* at 1123, Greene has successfully completed, at our direction, law school courses in Professional Responsibility and Administration of Estates. In some cases we have imposed harsher discipline where a lawyer, after having been disciplined, again violates an ethical standard. Here, the violation did not occur after the earlier discipline, and we therefore decline to impose a more substantial disciplinary sanction, as we would were this a "second offense" in the usual sense. *See In Re Means,* 218 Or 480, 343 P2d 1119 (1959).