Submitted on record and brief December 14, 1987, accused disbarred February 17, 1988

In re Complaint as to the Conduct of

# KENNETH C. DIXSON,
*Accused.*

(OSB 84-88; 84-110; 84-111; 85-81; and 85-107
SC 28109)

750 P2d 157

Donald L. Williams, Assistant General Counsel, Portland, filed the brief for the Oregon State Bar.

No appearance contra.

PER CURIAM

## PER CURIAM

In this disciplinary proceeding, the Trial Panel of the Disciplinary Board of the Oregon State Bar found the accused guilty of disciplinary rule violations in each of the Bar's ten causes of complaint. Based upon its findings and conclusions, the Trial Panel recommended suspending the accused from the practice of law for six months, with execution of the entire period of suspension stayed, and placing the accused on probation with conditions[1] for a period of two years. This matter is now before this court for *de novo* review pursuant to ORS 9.536(2) and BR 10.4(a).

The Bar requested that this court suspend the accused from the practice of law for a period of one year. In response to the inquiries submitted to the parties by this court, the Bar acknowledged disbarment as a proper sanction.[2] Our review of the entire record reveals that the accused has not only grossly neglected his clients' affairs, but has been deceitful to clients, to other members of the Bar, and to state and federal judges. He is disbarred.

---

[1] The terms of probation included:

"(A) The Accused should be required to cooperate in receiving Professional Office Practice and Management counseling from the Bar, or a member thereof acceptable to the Bar under reasonable terms determined by the Bar. This counseling should include evaluation of the Accused's docket, filing, and calendaring systems and trust account records.

"(B) During the period of Probation, the Accused should cooperate with the Bar who will make periodic audits to determine that his systems and records are being adequately maintained.

"(C) Within 30 days of the effective date of this opinion, the Accused, at his own expense, should be evaluated by a licensed psychiatrist and thereafter cooperate and participate in any recommended course of intervention which may relate to his ability to continue the practice of law.

"(D) The Accused should sign a release permitting the Bar to receive a copy of the psychiatric evaluation, any recommended intervention plan, and intermittent reports of progress during the period of Probation."

[2] This court submitted the following questions to counsel for the Bar and to the accused:

"1. If this court's findings and conclusions are essentially the same as those of the Trial Panel, is disbarment a proper sanction in this matter? Why or why not?

"2. Does either the Bar or the accused request that this matter be remanded to the Trial Panel for taking of further evidence as to the proper sanction for the violations of the disciplinary rules described in the Trial Panel's decision?"

The Bar responded that disbarment is a proper sanction if this court's findings are the same as those of the Trial Panel and that there would be no need for remand for a sanction hearing. The accused did not respond.

The Trial Panel's findings were based on clear and convincing evidence. Because of the severity of the sanction we impose, we will discuss each of the ten causes of complaint.

## FIRST CAUSE OF COMPLAINT
(Warren Guidry)

We find that the accused was retained by Warren Guidry on June 2, 1982, to represent Guidry on an employment discrimination and civil rights claim against the U. S. Army Corps of Engineers. The retainer agreement and receipt for payment of $500 bore Guidry's permanent address in Portland. The retainer agreement bore the notation signed by Guidry: "My attorney is authorized to sign my name and in all other respects to act for me."

By letter dated June 30, 1982, the accused sent a formal complaint of discrimination to the Corps of Engineers, which had been signed for Guidry by the accused. The cover letter advised that "Warren Guidry intends to file a formal complaint in court within the next 15 days if his complaints of discrimination are not resolved." The accused's letter closed with "Please reply as promptly as your review of these matters permits so that I may advise my client accordingly." The Department of the Army sent a "final decision" denying the claim by letter dated July 9, 1982, received by the accused July 12, 1982. In this letter the Army advised the accused that a civil action must be filed in "a U.S. District Court within 30 days of receipt" of the form.

On August 13, 1982, the accused filed a civil rights complaint in the U.S. District Court for the District of Oregon on behalf of Guidry against the Army and its agencies and officers. On December 9, 1982, the government filed its answer to the complaint, which set forth in count two, paragraph 4: "Plaintiff has failed to file timely judicial complaint." The accused failed to note this. The defense of untimely filing did not attract his attention until set forth in the government's motion to dismiss or for summary judgment filed January 5, 1983.

The accused had authority and direction from Guidry after June 2, 1982, to file the complaint in federal court. In response to the government's motion to dismiss or for summary judgment, however, the accused filed an affidavit with

the court falsely stating that the accused had no authority from Guidry to receive the final denial letter concerning Guidry's discrimination complaint. The court, based upon the transmittal letter and the accused's signature for Guidry on the discrimination complaint form, held that notice to the accused was notice to Guidry and granted summary judgment to the government. The authorization on the bottom of the fee agreement gave the accused the authority to receive the Army's denial letter and to file the discrimination action. The position of the accused that he could not accept the denial letter, but still had authority to file the action, is ludicrous.

The accused also failed to keep Guidry informed concerning the progress of the case, which caused Guidry to file a complaint with the Bar against the accused. The accused testified that he had advised Guidry of the dismissal by telephone in May 1983. We find that this testimony was false. On July 5, 1983, Guidry wrote the accused, giving his Navy fleet post office return address and asking for a status report on the case. He wrote:

"I have tried to contact you on several occasions but to no avail.

"I would like to know what progress you have made on the civil right suit filed against the army engineer and also the Chase Club.

"I would appreciate receiving all correspondence to date on these two matters by registered mail at your earliest convenience."

On July 21, 1983, Guidry again wrote to the accused asking for a status report and noting that he had received the return receipt indicating that the accused had received the July 5, 1983, letter.[3] There would have been no reason for

---

[3] On July 21, 1983, Guidry wrote to the accused:

"I am again reminding you that I have tried to contact you on numerous occasions.

"I would like to know the progress you have made on the civil rights suit against the Army Engineer and also the Chase Club.

"I would appreciate receiving all correspondence to date on these two matters by *registered mail* at your earliest convenience.

"The return receipt for the letter which I sent you on July 5 has been received by me, so I know that you have received my correspondence.

"I am enclosing two dollars to pay for registering your reply to me." (Emphasis in original.)

Guidry to write these letters if the accused had told him of the dismissal in May. We find the alleged May telephone conversation never took place. The accused lied that it had.

On September 26, 1983, Guidry wrote to the Bar complaining that the accused had not responded to his July 5 and 21, 1983, letters. In response to the Bar's inquiry, the accused wrote Guidry on November 8, 1983, making false reference to having previously given Guidry a status report. He finally advised Guidry that the case had been and remained dismissed. Guidry ultimately settled his claim for malpractice against the accused with the professional liability fund for $30,000.

As to the first cause of complaint, the record is clear that the accused filed a letter of complaint with the U.S. Army Corps of Engineers after receiving a retainer agreement and payment of $500. He expressed an intent to file a complaint in court but failed timely to do so. As a result of his negligence, the case was dismissed, causing a loss to his client, which was settled for $30,000 by the professional liability fund. The accused not only was negligent in failing to perform his professional responsibilities, he intentionally filed a false affidavit with the court, claiming he had no authority from his client to file the action. He then falsely swore to the Bar about advising his client of the status of the case.

The Trial Panel concluded that the accused violated *former* DR 1-102(A)(4) (current DR 1-102(A)(3)),[4] which provided:

> "A lawyer shall not:
>
> "* * * * *
>
> "(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

and also that the accused was guilty of violating *former* DR 6-101(A)(3) (current DR 6-101(B)), which provided:

> "A lawyer shall not:
>
> "* * * * *
>
> "(3) Neglect a legal matter entrusted to him."

---

[4] In 1986, the disciplinary rules discussed herein were amended in immaterial particulars and renumbered as noted.

We reach the same conclusions.

The Trial Panel concluded that the accused was not guilty of violating ORS 9.527(4)[5] and DR 7-102(A)(5). DR 7-102(A)(5) provides:

"In his representation of a client, a lawyer shall not:

"* * * * *

"(5) Knowingly make a false statement of law or fact."

We disagree. The record is clear that the accused knowingly made false statements to the court, in fact a sworn false statement. He also lied to his client and to the Bar. Such egregious conduct warrants a severe sanction.

## SECOND CAUSE OF COMPLAINT
### (Bertha LaVert)

The accused represented Bertha LaVert in an action filed in the U.S. District Court for the District of Oregon.

The accused failed to appear for a deposition scheduled for April 5, 1984, and failed to notify opposing counsel of his inability to appear. The plaintiff's deposition was then formally set for May 1, 1984, at the United States Courthouse. The accused failed to notify opposing counsel of his inability to appear at the deposition but instead sent his legal assistant (a non-lawyer), Ernest G. Moore, to attend. The accused instructed Moore to "sit in" on the deposition and attempt to reschedule the deposition. The deposition commenced and continued until the accused arrived. The accused then obtained the consent of the defendant's attorney to adjourn the deposition until May 4, 1984. The accused failed to appear for the continuance of the deposition on May 4, 1984, and failed to notify opposing counsel of his inability to attend.

On May 15, 1984, Judge Owen M. Panner dismissed the LaVert case as a sanction for the conduct set forth above and for other delinquencies of the accused. Thereafter, the

---

[5] ORS 9.527(4) provides:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"* * * * *

"(4) The member is guilty of wilful deceit or misconduct in the legal profession."

accused filed a motion for reconsideration of the order of dismissal, and a hearing on that issue was held on June 1, 1984. At that time Judge Panner vacated the order dismissing the case and assessed a monetary sanction of $250 against the accused. Although Judge Panner reinstated the case, he commented as to the "many, many excuses for what I consider many delinquencies."

The Trial Panel concluded and we conclude that the accused is guilty of violating *former* DR 1-102(A)(5) (current DR 1-102(A)(4)) for engaging in conduct prejudicial to the administration of justice and guilty of violating *former* DR 6-101(A)(3) (current DR 6-101(B)) for neglecting a legal matter entrusted to him. No other conclusion would be justified. The accused offers no acceptable excuse for his failure to represent his client.

## THIRD CAUSE OF COMPLAINT
### (Perry Alan Goin)

On or about July 19, 1984, the accused presented a check drawn on his client's trust account at Beaver State Bank of Beaverton, Oregon, payable to the Oregon State Court Administrator's office in the amount of $100, representing filing fees in the case of State ex rel Adult and Family Services v. Perry Alan Goin. On July 26, 1984, the check was presented to the bank by the State of Oregon for payment but was dishonored for lack of sufficient funds in the account.

On August 2, 1984, the accused telephoned the State Court Administrator's office and requested that the check be presented again for payment. Upon presentment a second time, the check was dishonored once again for insufficient funds. Thereafter, the accused redeemed the check.

At the time the check was presented for payment, there was a balance in the client's trust account of $88.50. Although the accused never accounted for this discrepancy other than claiming that there were "bank charges" that reduced the account balance, we do not find that he acted wilfully. The overdraft was just one more oversight by the accused. We conclude that the accused is not guilty of violating *former* DR 1-102(A)(4). However, this does not excuse the accused from failing to cooperate with the Bar in respect to

the charge which is under consideration in the Eighth Cause of Complaint.

## FOURTH CAUSE OF COMPLAINT
### (Deonna Anderson)

The accused represented Deonna Anderson in an action filed in Multnomah County Circuit Court and assigned to Judge Harl H. Haas for trial, resulting in a jury verdict for the plaintiff on December 1, 1984, in the amount of $18,424.

The defendant in the personal injury case asserted claims for an offset in the amount of personal injury protection benefits (PIP) previously paid by the defendant. At the accused's request, the defense attorney provided documentation of that claim in the amount of $10,530.58 to the accused on December 17, 1984.

The accused failed to present a form of judgment, after being directed by Judge Haas to do so on January 28, 1985. A second hearing was held on January 31, 1985, and when the accused failed to appear, the court entered a partial judgment which resulted in the payment to the plaintiff of her share of the proceeds. A subsequent hearing regarding the balance of the judgment proceeds was held on April 1, 1985, and the accused submitted an order on May 15, 1985, which correctly granted the release of the balance of funds to the accused.

We find that the accused advised the court at the April 1, 1985, hearing that the reason he had not presented a form of judgment in January was that he had waited for a clarification of the defendant's claim for the PIP set-offs. The accused was not waiting for clarification; he simply had failed to close the case. Further, the accused had no excuse to delay the presentation of a form of judgment from December 17, 1984, until forced to do so on May 15, 1985.

The Trial Panel found and this court finds that the accused was dishonest to the court regarding the reasons for his failure to submit a form of judgment. Because the accused intentionally lied to Judge Haas about his reasons for failure to act, we find the accused guilty of violating *former* DR 1-102(A)(4) and *former* DR 6-101(A)(3) for his neglect in failing to submit a form of judgment.

## FIFTH CAUSE OF COMPLAINT
### (Pinkney M. Saxton)

Pinkney M. Saxton consulted the accused between December 1982 and May 1983 concerning a property damage action previously filed on Saxton's behalf by another attorney and a potential cause of action against a previous employer for employment discrimination and improper termination.

On May 31, 1983, the accused received from and issued a receipt to Saxton for $60 for partial fees. On October 19, 1983, the accused's secretary received $100.50 from Saxton and issued a receipt to Saxton for "filing fees-civil cases."

The accused did not file pleadings or complaints on either matter and did not pay or incur any filing fees on Saxton's behalf. Saxton was not reimbursed any part of the funds paid to the accused, nor did the accused render any accounting to Saxton of the disposition of funds received from Saxton. The accused did not deposit the $100.50 payment to a trust account, maintain records of the disposition of funds, or maintain time or billing records on the matters he worked on for Saxton. The accused has made no accounting for the funds.

The Trial Panel concluded and this court concludes that the accused is guilty of violating *former* DR 9-102(A)(2) (current DR 9-101(A)(2)), which provided:

> "All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable trust accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
>
> "* * * * *
>
> "(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved."

The Trial Panel concluded and this court concludes that the accused is guilty of violating *former* DR 9-102(B)(3)

(current DR 9-101(B)(3)),[6] in that the accused failed to maintain records of the funds or account to the client regarding them.

## SIXTH CAUSE OF COMPLAINT
### (Failure to cooperate with Bar)

On March 26, 1984, the General Counsel of the Oregon State Bar received a letter from Warren Guidry requesting assistance in obtaining information from the accused concerning Guidry's legal matters, previously discussed under the Bar's First Cause of Complaint.

On April 2, 1984, the General Counsel sent a letter to the accused requesting that the accused answer Mr. Guidry's inquiries by April 7, 1984. The accused did not do so. On April 26, 1984, the General Counsel advised the accused by letter to respond in writing directly to the General Counsel regarding the Guidry complaint by May 18, 1984. The accused did not respond. On June 15, 1984, the General Counsel referred the matter to the Multnomah County Local Professional Responsibility Committee (LPRC) for further investigation.

The Trial Panel found and this court finds the accused guilty of violating the standard of professional conduct of DR 1-103(C),[7] in that he did not respond to the reasonable requests of the General Counsel.

## SEVENTH CAUSE OF COMPLAINT
### (Failure to cooperate with Bar)

Ernest G. Moore filed a complaint against the accused with the General Counsel of the Bar on June 4, 1984.

---

[6] *Former* DR 9-102(B)(3) provided:

"A lawyer shall:

"* * * * *

"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them."

[7] *Former* DR 1-103(C) provided:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of the general counsel, the local professional responsibility committees, the state professional responsibility board, and the board of governors as requested, subject only to the exercise of any applicable right or privilege."

By letter dated June 7, 1984, the General Counsel requested the accused to respond to Moore's complaint by June 27, 1984. The accused did not respond. On July 9, 1984, the accused requested an extension of time from the General Counsel to respond to Moore's complaint.

After receiving the request for an extension of time from the accused, the General Counsel was informed by Moore that he (Moore) had further information to furnish. By letter dated July 10, 1984, the General Counsel advised the accused that he was being granted an extension of time of 21 days from when Moore's letter would be received and forwarded to the accused.

Moore's letter was received by the General Counsel on September 17, 1984. A copy of the Moore letter and a letter dated September 19, 1984, were sent to the accused by the General Counsel, requesting that the accused respond on or before October 11, 1983. The accused did not respond.

On October 15, 1984, the General Counsel referred the matter to the Multnomah County LPRC for investigation. By letter dated November 8, 1984, Multnomah County LPRC member Jane E. Angus asked the accused for a written explanation and response to Moore's complaint by November 29, 1984. The accused talked to Angus twice prior to November 29, 1984, stating he would respond to the request.

Approximately two weeks after November 29, 1984, the accused contacted Angus and promised immediate preparation and delivery of a response. As of January 30, 1985, the accused had not furnished the requested written response. By letter dated January 30, 1985, Angus advised the accused that, if his response was not received by February 8, 1985, the matter would be presented to the Multnomah County LPRC for further action.

On February 8, 1985, the accused advised Angus that the requested response was not yet prepared but would be delivered by February 12, 1985. On February 11, 1985, the accused delivered the requested response to Angus.

The Trial Panel concluded and this court concludes that the accused is guilty of violating the standard of professional conduct of *former* DR 1-103(C), in that he did not

respond to the reasonable requests of the General Counsel and the Multnomah County LPRC.

## EIGHTH CAUSE OF COMPLAINT
### (Failure to cooperate with Bar)

Carol Justis, Records Administrator, State Court Administrator's Office, filed a complaint against the accused with the General Counsel of the Bar on September 4, 1984.

By letter dated September 5, 1984, the General Counsel requested the accused to respond to Justis's complaint by September 27, 1984. The accused did not respond. On October 15, 1984, the General Counsel referred the matter to the Multnomah County LPRC for further investigation.

By letter dated November 8, 1984, Multnomah County LPRC member Angus requested that the accused submit a written explanation and response to Justis's complaint by November 29, 1984. On November 15, 1984, the accused furnished Angus copies of his bank statements pertaining to his client's trust account and executed an authorization for disclosure of bank records. The accused talked to Angus again prior to November 29, 1984, promising the requested written response. Approximately two weeks after November 29, 1984, the accused contacted Angus and promised the response immediately.

The accused's behavior illustrates his overall attitude toward all the complaints filed against him. Despite having a colorable explanation for his actions in this instance, the accused failed to show any interest in the Bar's investigation. The record shows that after several promises to deliver an explanation, none of which were fulfilled, the accused "left a telephone message [on Thursday] for the reporting LPRC member advising that relatives had arrived in town unexpectedly and that he would be unable to provide the explanation until [the following] Monday." The accused never furnished a written explanation of the complaint filed by Justis or claimed the exercise of any applicable right or privilege to refrain from doing so.

The Trial Panel concluded and this court concludes that the accused is guilty of violating the standard of professional conduct of *former* DR 1-103(C), in that he did not

respond to the reasonable requests of the General Counsel of the Bar and the Multnomah County LPRC.

## NINTH CAUSE OF COMPLAINT
### (Failure to cooperate with Bar)

As previously noted, Circuit Judge Harl H. Haas filed a complaint against the accused with the General Counsel of the Bar on May 28, 1985.

By letter dated May 31, 1985, the General Counsel requested the accused to respond to Judge Haas's complaint by June 21, 1985. The accused did not respond. On July 17, 1985, the General Counsel referred the matter to the Multnomah County LPRC.

On August 12, 1985, Multnomah County LPRC member Jane Angus spoke with the accused to inquire as to the status of his written response. The accused promised to deliver his response no later than August 16, 1985. The accused never furnished a written explanation by August 16, 1985, or at any other time thereafter, nor has the accused claimed the exercise of any applicable right or privilege to refrain from doing so.

The Trial Panel concluded and this court concludes that the accused is guilty of violating *former* DR 1-103(C), in that he did not respond to the reasonable requests of the General Counsel of the Bar and the Multnomah County LPRC.

## TENTH CAUSE OF COMPLAINT
### (Failure to cooperate with Bar)

Pinkney M. Saxton filed a complaint against the accused with the General Counsel of the Bar on August 2, 1985.

By letter dated August 9, 1985, the General Counsel requested the accused to respond to Saxton's complaint by August 30, 1985. The accused did not respond. On September 11, 1985, the General Counsel referred the matter to the Multnomah County LPRC. The accused did not promptly respond to inquiries of the LPRC, nor has the accused claimed the exercise of any applicable right or privilege to refrain from doing so.

The Trial Panel concluded and this court concludes that the accused is guilty of violating *former* DR 1-103(C), in that he did not respond to the reasonable requests of General Counsel of the Bar and the Multnomah County LPRC.

## DISCUSSION

After concluding that the accused was guilty of multiple violations of the disciplinary rules involving deceit and neglect, the Trial Panel chose to stay a suspension of the accused from the practice of law for six months and set forth elaborate conditions of probation. One of the conditions required that the accused be evaluated by a licensed psychiatrist and thereafter participate in a course of "intervention," which we infer means psychiatric treatment or counseling. There is no evidence in this record that this accused suffers from a psychiatric disorder or, if he does, that any disorder could be modified by psychotherapy.

The record in this proceeding demonstrates that the accused engaged in intentional and deceitful acts. In addition, the record reveals overwhelming evidence of repeated negligent conduct.

The disarray in the accused's life is revealed in his answer to the Bar complaint. In an attempt to excuse his misconduct before Judge Haas, described in the Fourth Cause of Complaint, the accused alleged that:

> "all during this period of time, the accused was under the threat of immediate jailing by the Hon. R. P. Jones on a civil contempt judgment, which had been ordered dismissed pursuant to Rule 4 on August 1, 1984, which had been reinstated and a default order entered personally against the accused, while he was in California attending the funeral of [a] relative * * *.

> "That the Hon. R. P. Jones had made a finding of Civil Contempt although the accused was never personally served with the Order allegedly disobeyed, had required the accused to appear in Court or in public where he was humiliated before clients, other litigants and other members of the Bar, all of which was to enforce the payment, on top of the almost $100,000 plus judgment, which had been granted to the other party, without notice to the accused. That of all the parties involved, the accused was as vitally interested in obtaining his share of the proceeds of the award, however, because, at least

up until January 28, 1985, had expressed an interest in contesting the proposed set-off which had been verbally, off-the-record ordered by Judge Haas, in chambers. At the time the Court initially refused to discuss the matter with the accused, the accused was facing suspension by the Bar for non-payment of fees; jailing by Judge Jones for non-payment of a portion of the civil award, and repossession of his car. * * *"

As to the Ernest Moore matter, described in the Seventh Cause of Complaint, the accused claimed in his answer that:

*"Moore,* one of the complainants in this Formal Complaint, *burglarized* the accused's office, on or about May 31, 1984, stole the accused's *only* typewriter, many of the accused's books and files, trashed the office, and then filed his *written complaint,* which is the basis of the Seventh Cause of Complaint, and the apparent genesis of the Second Cause of Complaint, all while utilizing the *accused's typewriter,* which could not be replaced for several weeks." (Emphasis in original.)

As to other charges, the accused alleged in his answer:

"During the approximately three weeks after Moore stole the accused's typewriter, the accused had to complete his typing task, wherever, or whenever a free typewriter could be located amongst friends or colleagues; during this same period of time, the accused had to file several motions and other legal memoranda, in the *LaVert* case, the *Goin* case, prepare for the first *Deonna Anderson* jury trial, several other criminal matters, and was being harassed by the Bar counsel for not answering the *Guidry* matter.

"Don Williams of the Bar office was advised of the accused's torment occasioned by Mr. Moore's use of the Bar's disciplinary process to press his ludicrous demands from the jail or prison, against the accused. The Board did not relent in this matter until Moore's substantive complaint was held to be unfounded, but *after a decision was made to prosecute this* formal complaint, naming, amongst others, the accused's alleged violation of DR 1-103(C). It should be finally noted that throughout this period of time, the accused was under a tremendous stress and strain, including the death of a family member in early August, 1984, a $100,000.00 plus default judgment, while the accused was out of town, for most of the month of August, which said case had been ordered dismissed, on August 1, 1984; the *Justis* matter, which arose during the

same period of time when both the *Guidry, Moore* and *La Vert* cases or matters were still pending."

Further:

"That just prior to commencing the second *Anderson* trial, the accused had been advised by the Hon. R. P. Jones, that a payment, in excess of $1,000 would have to be made, by January 1, 1985, or the accused could expect to be jailed until he could do so, or words to that effect; the accused was under, the stress of compulsion to respond to numerous complaints, was under the imminent threat of being jailed for funds he did not have, nor could then obtain it's [*sic*] own copies of the accused's trust account records, in addition reasonable [*sic*] expect, given the $100,000 judgement against him, and he still had client's legal matters pending in the Courts. At one point in time, commencing after the 1st of January, 1985, the accused was required by the Hon. R. P. Jones to make a weekly report to the Court, in person, at which time the accused was verbally admonished before any and all litigants or other attorneys who were always present; this weekly report took it's [*sic*] toll on the accused's emotional and physical vitality, and also any extra time which might be available for the other pending matters which were not then, in or before the Courts."

Finally, the accused claims:

"That the accused underwent surgery in May, 1985, and was out of his office for nearly one month; during this period of the time, another new typewriter was stolen from his office, the accused's automobile was stolen on May 31, 1985, leaving the accused without ready access to transportation, and the other resources he utilized for written communications, and there was never any specification of the exact nature of the Judge's complaint delivered to the accused, until the filing of the formal complaint, herein."

The accused's answer in response to charges demonstrates a person who is utterly unable to cope with the responsibilities of practicing law. The Trial Panel concluded that his alibis were subject to question. The Trial Panel listed his alibis as follows:

"1. Stolen car.

"2. Briefcase stolen.

"3. Relatives came in town unexpectedly.

"4. Office burglarized three times.

"5.  Typewriter stolen.

"6.  Home burglarized.

"7.  Several deaths in the family (allegedly four in one year).

"8.  Secretary stole checkbook.

"9.  New secretary made incorrect entry in records.

"10. Had to attend funeral.

"11. Other business.

"12. Sole practitioner.

"13. Secretary deposited funds in wrong account.

"14. 14-year-old son failed to notify Accused of receipt of a certified letter.

"15. When the Accused's office was burglarized it was 'trashed' and files disrupted.

"16. Accused couldn't contact opposing counsel because 'I don't have a home phone.'

"17. Upon being admonished for not bringing his files to Judge Haas' court, the Accused responded: 'I have a number of things that came up this morning.'

"18. Pressure of certain cases interfered with the Accused's ability to respond.

"19. At the opening Trial Panel session, the Accused was approximately 3/4 hour later. He called to say that he had car trouble. When he arrived he made no apology. At the Friday session, he was 3/4 hour later with no explanation.

"20. He made an unusual explanation of some delinquency, claiming that he was 'under threat of immediate jailing.'

"21. On page 18 of the Answer to Complaint, the accused said he was 'facing suspension by the Bar for non-payment of fees; jailing by Judge Jones for non-payment of a portion of the civil award; and repossession of his car'."

## CONCLUSION

The record reveals that this accused has been struggling to practice law for ten years, with multiple complaints to the Bar about his professional misconduct. The multiple complaints have been proved by clear and convincing evidence. The record demonstrates that this accused not only has neglected his clients' affairs, but that he also shows a remarkable lack of veracity. Such a person should not be allowed to

practice law in this state. The accused is disbarred. Costs awarded to the Oregon State Bar.