Submitted on record and briefs January 29, accused disbarred March 15, 1988

In re Complaint as to the Conduct of
# BRIAN J. HAWKINS,
*Accused.*
(OSB 86-113; SC S34545)
751 P2d 780

Teresa J. Schmid, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, for the Oregon State Bar.

No appearance contra.

PER CURIAM

**PER CURIAM**

The only issue really presented on the record in this matter is whether the accused should be disbarred. We hold that he should be.

Following are the facts that we find on *de novo* review of the record pursuant to ORS 9.536(3).

In California in June 1984, a child was born to a 16-year-old unwed mother. The identity of the father was known to the mother.

When the child was about one month old, the mother brought the child to Grants Pass, Oregon, where until October 12, 1984, the mother and child lived with a relative. In that month, the relative sought the professional services of the accused to attempt to adopt the child.

The accused accepted a fee from the new client and advised her that it would be better first to seek to be appointed guardian of the child and that adoption could be attempted later.

The accused prepared a form of consent for the signature of the mother. After the client picked up the form from the accused's office, she drew to his attention some errors in the facts asserted in the form. She told the accused that he had misstated that the child was born in Grants Pass and that the father's identity was unknown. The accused prepared another form, and the client took it from the accused's office to her home. She did not notice that the misstatements had not been corrected.

On October 12, 1984, the client either procured the signature of the mother on the form or by some means procured what purported to be the mother's signature. The mother left the client's residence that day, first going to the residence of another relative in Aumsville, Oregon, and a couple of weeks later going to the residence of her own mother in California. The mother of the infant child did not come back to Oregon until June of 1986.

The mother of the infant child was never in the presence of the accused during the time she was in Grants Pass and was in California all of the month of November 1984.

On October 13, 1984, the client took the form purportedly bearing the mother's signature to the office of the accused. She also took to his office three other documents that bore true signatures of the mother. The accused compared those signatures with that on the form and said to the client, either "Nobody could miss that," or "There is no doubt, nobody can deny that."

Among other things, the consent form contained a waiver of "further notice" to the mother of any proceedings in the guardianship matter.

The accused prepared a petition for the client to institute guardianship proceedings. To it the accused attached the consent form.

The consent form had originally been prepared for signature and notarization on "this ___ day of October, 1984." As attached to the petition and filed in court on November 20, 1984, the figure "19" had been filled in in the blank and a line drawn through the word "October" and the word "November" written in above.

The consent form was drawn in the form of an affidavit. The accused signed the jurat as a notary public, thereby certifying that the document had been subscribed and sworn to before him.[1] The jurat was false.

On November 20, 1984, the accused filed the petition and attached consent in Josephine County Probate Court and thereby obtained an order appointing the client as guardian of the child. The order recites "that the required notices have been given or waived." In making and entering that order, the court was misled by the accused so that the court believed that it was unnecessary to give notice to the father or obtain his waiver as required by ORS 126.070(1)(c).

A couple of years later, proceedings were instituted in circuit court in Josephine County to determine as between the client and the mother who was to have custody of the child.

---

[1] Interestingly, the accused wrote below his signature as a notary public that his commission "expires 11/19/84." There is in the record a curious remark by the lay member of the trial panel while the form was being considered: "Something interesting here, 'My commission expires October 11, 1984.' " To this the chairperson responded: "That really is wild." There is nothing on the copy of the form in evidence before us that would provoke such a colloquy. It is possible that they were looking at a copy of the petition rather than the consent.

The client had to "hire" a lawyer to represent her and her husband in those proceedings.[2] In addition to trial of those proceedings, the client prosecuted an appeal to the Court of Appeals that is still pending.

The Bar filed a complaint, charging the accused with the conduct above described. The complaint and notice to answer were served on the accused on April 16, 1987. He has never answered. He was given prior adequate notice that a hearing would be held by a trial panel on August 4, 1987. He did not appear. The trial panel ordered that his default be entered.

The Bar's complaint charges that the accused's conduct violated ORS 194.515(3) and (6), ORS 194.310(3), DR 1-102(A)(3), DR 7-102(A)(4), (5), (6) and (8), and ORS 9.460(4).[3] The trial panel took evidence, made findings sub-

---

[2] The record does not reveal the amount of money she has paid for that lawyer's services.

[3] ORS 194.515(3) and (6) provide:

"(3) In witnessing or attesting a signature the notarial officer must determine, either from personal knowledge or from satisfactory evidence, that the signature is that of the person appearing before the officer and named therein.

"* * * * *

"(6) A notarial officer has satisfactory evidence that a person is the person whose true signature is on a document if that person (a) is personally known to the notarial officer, (b) is identified upon the oath or affirmation of a credible witness personally known to the notarial officer or (c) is identified on the basis of identification documents."

ORS 194.310(3) provides:

"A notary public, in the exercise of the powers or in the performance of duties, shall not practice any fraud or deceit, or wilfully make any false certificate, acknowledgment or jurat."

DR 1-102(A)(3) provides:

"It is professional misconduct for a lawyer to:

"* * * * *

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

DR 7-102(A)(4), (5), (6) and (8) provide:

"In the lawyer's representation of a client, a lawyer shall not:

"* * * * *

"(4) Knowingly use perjured testimony or false evidence.

"(5) Knowingly make a false statement of law or fact.

"(6) Participate in the creation or preservation of evidence when the

stantially the same as those we have made, concluded that the accused had violated ORS 194.310(3), ORS 194.515(3), ORS 9.460(4), DR 1-102(A)(3) and DR 7-102(A)(4) and (8). The trial panel decided that the accused be disbarred.

The accused failed timely to file any request for review by this court. The Bar has filed a request for review and asks that we adopt the findings and decision of the trial panel.

The accused violated ORS 194.310(3), which forbids a notary from wilfully making a false certificate or jurat. He also violated ORS 194.515(3) because the mother did not appear before him. Although the trial panel made no conclusion concerning violation of ORS 194.515(6), we conclude that that subsection is not applicable to the facts here and therefore conclude that the accused did not violate this subsection.

The accused's preparation and use of the consent form, which contained a statement that he had been informed was false to secure the order appointing his client as guardian, was knowing because he had been informed of its falsity. The form was used as evidence to secure the order. This was a violation of DR 7-102(A)(4). This conduct also constituted a false statement of fact and thereby violated DR 7-102(A)(5). His participation in the creation of the false evidence violated DR 7-102(A)(6).

The accused's violation of ORS 194.310(3) was a misdemeanor under ORS 194.990. In wilfully making the false jurat, he knowingly engaged in illegal conduct. That is a violation of DR 7-102(A)(8). By filing the false affidavit, the accused also violated DR 1-102(A)(3) because this was a misrepresentation. *See In re Hockett,* 303 Or 150, 159-60, 734 P2d 877 (1987).

---

lawyer knows or it is obvious that the evidence is false.

"\* \* \* \* \*

"(8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule."

ORS 9.460(4) provides:

"An attorney shall:

"\* \* \* \* \*

"(4) Employ, for the purpose of maintaining the causes confided to the attorney, such means only as are consistent with truth, and never seek to mislead the court or jury by any artifice or false statement of law or fact[.]"

In maintaining the cause confided to him by his client, he did not employ such means only as were consistent with the truth, and he did mislead the court by artifice and a false statement of fact that he knowingly made to the probate court. This violated ORS 9.460(4).

The consent form was constructed as an affidavit. Long ago this court said:

> "That the pretended affidavits filed for the consideration of the court were not such in fact will hardly admit of argument. 'An affidavit is a written declaration under oath, made without notice to the adverse party': Hill's Ann. Laws, § 803. And the oath is administered by addressing to the affiant a prescribed formula, which may be varied to suit the occasion, whereby he is called upon to attest with uplifted hand the truth of what he is about to assert, under an immediate sense of his responsibility to God: Hill's Ann. Laws, §§ 867, 868. To make such a document legal and authoritative in a court of justice, it takes both the affiant and officer authorized to administer the oath, acting together; and the oath must be either administered by the officer to the affiant, or asseveration must be made to the truth of the matters contained in the affidavit, by the party making it, to the officer, with his sanction: *Matthews v. Reid,* 94 Ga. 461 (19 S.E. 247); *Carlisle v. Gunn,* 68 Miss. 243 (8 South. 743). Without a direct administration of the oath, there can be no affidavit, under the statute."

*Ex parte Finn,* 32 Or 519, 525, 52 P 756 (1898). Finding that Finn had employed the false affidavits to obtain action of the court that Finn desired, this court held that Finn had engaged in wilful misconduct in his profession and suspended him. In doing so, this court pointed to the grave consequences to the public and litigants that may flow from the use of false affidavits. The court also noted that such conduct is well calculated to mislead a court into a perversion of justice, just as did this accused's conduct in the case at bar.

We come now to the matter of appropriate sanction. We may approach the matter by asking four questions:

"(1)  What ethical duty did the lawyer violate? (A duty to a client, the public, the legal system, or the profession?)

"(2)  What was the lawyer's mental state? (Did the lawyer act intentionally, knowingly, or negligently?)

"(3)  What was the extent of the actual or potential injury

caused by the lawyer's misconduct? (Was there a serious or potentially serious injury?) and

"(4) Are there any aggravating or mitigating circumstances?"

American Bar Association, Standards for Imposing Lawyer Sanctions 5 (hereinafter "Standards").

(1) The duty here violated was one owed to the legal system. The false jurat, the use of the false evidence to procure the appointment of the guardian, and the misrepresentation warrant disbarment.

> "Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party * * *."

Standards at 40, § 6.11.

(2) Here the mental state was a conscious objective or purpose to accomplish a particular result. This is what the Standards define as "intent."

(3) There was both harm to the accused's client and harm to the legal system. The accused's conduct has embroiled his client in lengthy legal proceedings concerning the custody of the child. We infer that this protracted litigation has made his client liable for substantial attorney fees. In addition, the legal system has been harmed, both by the wrongful procurement of the order appointing a guardian and by the expense to the system and the taxpayers of the subsequent litigation engendered by the accused's conduct.

(4) Aggravating factors are the accused's refusal to acknowledge the wrongful nature of his conduct, the vulnerability of the victim and his substantial experience in the practice of law (11 years).

We find no mitigating factor in the record other than the absence of a prior disciplinary record. There may be mitigating factors unknown to us that would reduce the sanction from disbarment to a substantial period of suspension, but the accused chose not to defend against these charges, and after he had been advised that the trial panel had decided to disbar, he

chose not to question that decision in this court. He submitted neither petition, brief nor argument.

The violation of five separate disciplinary rules and three statutes (including the commission of a misdemeanor) warrants disbarment.

It is ordered that the accused is disbarred, and the Oregon State Bar shall have judgment in its favor and against the accused for the Bar's actual and necessary costs and disbursements incurred in this matter.