Argued and submitted August 28, accused suspended from the practice of law for two
years December 12, 1991, reconsideration denied February 25, 1992

In re Complaint as to the Conduct of

## Howard R. HEDRICK,
*Accused.*

(SC S32443)

822 P2d 1187

Mark M. Williams, Portland, argued the cause and filed the briefs for accused.

Mary A. Cooper, Bar Counsel, Lake Oswego, argued the cause for the Oregon State Bar. Martha M. Hicks, Assistant Disciplinary Counsel, Lake Oswego, filed the brief.

PER CURIAM

## PER CURIAM

In this lawyer discipline case, the accused was charged with violations of five sections of the Code of Professional Responsibility in connection with litigation concerning an estate. A trial panel found the accused guilty of violating four sections of the Code and recommended that he be suspended from the practice of law for 180 days. On automatic *de novo* review, ORS 9.536(2), we find the accused guilty of all five charges. We suspend the accused from the practice of law for two years.

■        All the allegations of impropriety by the accused arose out of two wills of a former client of the accused, Leonard Winkler. In 1978, the accused prepared a will for Winkler, which Winkler executed. The will named the accused as personal representative and provided that the will would not be revoked by a subsequent marriage. Winkler married Anne Winkler in August 1981 and executed a second will, one apparently prepared without the assistance of counsel, on June 8, 1986. The later will named Anne Winkler as the personal representative and made her the sole heir to the estate of Leonard Winkler.

Leonard Winkler died a year later. Soon thereafter, the accused drafted (but did not file) a petition to probate the 1978 will. Before filing the petition, the accused learned of the 1986 will from Anne Winkler's lawyer. The accused and the beneficiaries under the 1978 will claim to have become concerned that Anne Winkler was using assets of the estate for her own purposes. The accused and the heirs agreed[1] that the accused would offer the 1978 will for probate. The accused filed the petition to probate the 1978 will on December 8, 1987, in Multnomah County Circuit Court. The petition did not reflect the existence of the later will. Instead, the petition referred to the 1978 will as Leonard Winkler's "last will." The court admitted the 1978 will to probate, and named the accused as personal representative of the estate. It took several months for the later, 1986, will thereafter to be admitted to probate, for Anne Winkler to be substituted as personal representative, and for the parties to resolve their

---

[1] Another lawyer represented the heirs.

differences over how the estate of Leonard Winkler should be distributed.

On January 13, 1988, the accused, while still acting as personal representative under the 1978 will, communicated by letter with Anne Winkler. The accused knew at the time that Winkler was represented by counsel; he sent a copy of his letter to Anne Winkler to her lawyer. The accused had not been authorized by Winkler's counsel to communicate directly with her.

In its first cause of complaint, the Bar alleged that the petition filed by the accused with the probate court contained false representations and misrepresentations, in violation of DR 1-102(A)(3) and (4) and of DR 7-102(A)(3) and (5). The first two sections provide that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation, or to engage in conduct that is prejudicial to the administration of justice. The latter two sections provide that it is professional misconduct for a lawyer to conceal or knowingly fail to disclose that which the lawyer is required by law to reveal, and for a lawyer knowingly to make a false statement of law or fact.

The statement in the petition filed by the accused to the effect that the 1978 will was Leonard Winkler's "last" will was false; there was a 1986 will of which the accused was aware. The accused argues nonetheless that there is no violation of the disciplinary rules, because inclusion of the statement in the petition was not knowing. According to the accused, the petition that he finally filed in November 1987 was the petition that he had prepared several months earlier. It was only during the interim between preparation and filing that he learned of the later will. Failure to change the wording, he explains, was simple inadvertence.

The trial panel apparently believed the accused. The panel stated:

> "We find that [the accused's] reference to the 1978 will as the 'last will' was neither intentional nor deliberate. [The accused] drafted the petition prior to learning of the later will using standard form language. He inadvertently neglected to revise the petition after learning of the later will. However, we find that his failure to advise the court of the 1986 will was

both intentional and deliberate. It was his intent and expectation that an advantage would be obtained by Winkler's children if the 1978 will were first admitted to probate. [The accused, the lawyer for the Winkler children,] and Winkler's children originally expected a 'will contest', and delayed filing the petition to probate the 1978 will for a number of months, expecting that there would be a petition offering the 1986 will to probate. When the 1986 will was not offered, [the accused] made the deliberate decision to offer the 1978 will as the operative or 'last' will. He intentionally offered a will to probate which he knew had been revoked by a subsequent will. His non-disclosure of the later will was not an oversight, and he did nothing at the time he filed the petition to expedite a will contest. In a note to [the lawyer for the Winkler children], he even referred to the possibility that Anne Winkler's attorney might let the time run for filing a will contest.''

We disagree with the trial panel. The use of the term ''last will'' in the petition and the accused's failure otherwise to disclose to the probate court the existence of the later will are, in our view, part of a common plan designed to gain for the accused the tactical advantage that would flow from being the personal representative, in charge of the estate and its assets and earning fees for work performed for the estate. We simply do not believe the accused when he claims not to have known what was alleged in the petition that he filed. Given the situation at the time he filed the petition, the accused *had* to have known that the petition claimed that the will that accompanied it was the ''last'' will. Indeed, as the trial panel found (and as we also find), the accused otherwise was intending to mislead by failing to disclose in any other way the existence of the later will. Such a thought process can hardly have gone through the mind of an experienced probate lawyer like the accused without a concurrent thought for what *was* going to be said in the petition that *was* filed.

We find, by clear and convincing evidence, that the accused made a misrepresentation in the petition that violated DR 1-102(A)(3). *See In re Hiller*, 298 Or 526, 532-33, 694 P2d 540 (1985) (a misrepresentation occurs when a lawyer has an undisclosed material fact in mind and knowingly fails to disclose it).

The accused also argues that he was under no obligation to disclose to the probate court the existence of the later will. That argument is untenable. This court addressed the need for candor from probate lawyers in *In re Greene*, 290 Or 291, 297-98, 620 P2d 1379 (1980), where it stated:

"We view the violation of the disclosure requirements of ORS 9.460(4) and DR 1-102(A)(4) [now renumbered DR 1-102(A)(3)] as a serious matter, particularly in the context of an *ex parte* presentation to the judge. The evidence shows that neither the probate judge nor the probate clerks made much, if any, investigation into the merits of such requests. Our experience has been [that] all judges regularly rely upon the candor, honesty and integrity of the lawyer in handling *ex parte* matters which are presented to them. Extremely important judicial decisions are often made in probate cases, injunction cases and domestic relations cases on *ex parte* application of lawyers. Judges must be able to rely upon the integrity of the lawyer.

"A half-truth or silence can be as much a misrepresentation as a lie. In effect, the petitions here involved are half-truths, for they fail to advise the court of very important necessary information * * *. The necessity for complete candor when dealing with the court, particularly in an *ex parte* context, cannot be overemphasized."

(Citation omitted.) In *Greene*, the lawyer was held to have violated the disciplinary rules by failing to disclose, in an *ex parte* petition for permission to invest conservatorship funds in real estate, that the real estate belonged to the conservator, who also happened to be the lawyer's wife. The accused had the same kind of obligation to disclose here.[2] We find, by clear and convincing evidence, that the accused is guilty of conduct prejudicial to the administration of justice, in violation of DR 1-102(A)(4). *In re Greene, supra. See also In re Haws*, 310 Or 741, 744-48, 801 P2d 818 (1990) (discussing meaning and scope of "conduct prejudicial to the administration of justice").

The same evidence leads us to conclude that the accused is equally guilty of violations of DR 7-102(A)(3) (a

---

[2] Although *In re Greene*, 290 Or 291, 620 P2d 1379 (1980), and the specific passage from that opinion on which we rely, 290 Or at 297-98, were identified in the trial panel's opinion, the accused does not even mention *Greene* in either of his briefs filed with this court.

lawyer shall not knowingly fail to disclose that which the law requires be revealed). It is clear that case law from the Court of Appeals, reasonably interpreted, required that the accused disclose the existence of the 1986 will to the probate court. *See Reynolds v. Givens*, 37 Or App 785, 588 P2d 113 (1978) (improper for lawyer, even if lawyer had doubts about the validity of an extant will, to seek appointment as personal representative while alleging that the decedent had died intestate). The accused attempts to distinguish *Reynolds* as a case of affirmative representation, rather than one of failure to disclose, but neither the case nor the principle that it represents may fairly be so encapsulated.

We also conclude that the accused's actions violated DR 7-102(A)(5) (a lawyer shall not knowingly make a false statement of law or fact). It is established that the verified petition filed by the accused contained a false statement, *viz.*, that the proffered will was the decedent's "last" will. That was sufficient to violate the rule. *See In re Hawkins*, 305 Or 319, 324, 751 P2d 780 (1988) (consent form containing statements known by lawyer to be false, and which were intended to secure appointment of lawyer's client as guardian, violated rule); *In re Dixson*, 305 Or 83, 89, 750 P2d 157 (1988) (filing of false affidavit by lawyer violated rule).

Finally, we conclude that the accused violated DR 7-104(A)(1) (a lawyer shall not communicate on a subject on which the lawyer represents a client with another person known to be represented by another lawyer, unless the other lawyer consents to such communication). On January 13, 1988, the accused sent a demand letter to Anne Winkler requesting that she return certain funds from her husband's estate and that she provide an accounting. At the time, the accused knew that Anne Winkler had counsel — the accused sent counsel a copy of the demand letter. Counsel had not consented to the communication.

The accused argues that he is not guilty of violating DR 7-104(A)(1), because he sent a copy of his letter to Mrs. Winkler's lawyer, because the letter did not ask her to take any action without consulting counsel, and because no harm was caused by the communication. None of the foregoing arguments recognizes the categorical nature of the rule:

communication in the manner covered by the rule is forbidden, period. A lawyer is not permitted to ignore the plain words of the rule and then escape responsibility for violating it because no harm was caused, or because counsel for the party receiving the communication was alerted that it had been made. *See, e.g., In re McCaffrey*, 275 Or 23, 28, 549 P2d 666 (1976) (communications of this type are apt to cause party to act without advice of counsel, and it is that danger that the rule guards against; proof of harm to represented person not required for violation of rule).

In summary, we find the accused guilty of all five charges made against him by the Bar. We turn now to the question of sanction.

In determining the appropriate sanction for a lawyer guilty of ethical misconduct, this court has followed the approach taken in Standards for Imposing Lawyer Sanctions, published by the American Bar Association in 1986. *In re Willer*, 303 Or 241, 735 P2d 594 (1987). The ABA Standards set out four factors to be considered in determining an appropriate sanction:

1. The type of duty violated by the lawyer;

2. The lawyer's mental state at the time;

3. The extent of actual or potential injury caused by the violation; and

4. The existence of aggravating or mitigating circumstances.

We commonly analyze a case in the light of these four factors in determining an appropriate sanction. *See, e.g., In re Recker*, 309 Or 633, 639-41, 789 P2d 663 (1990) (illustrating process). We shall address each of these four factors in turn.

1. *The type of duty violated.*

A lawyer's duty to maintain the integrity of the legal system, to avoid false statements, and to perform the lawyer's duties with honesty and integrity, are fundamental. The accused violated them all.

### 2. *The accused's mental state.*

The accused acted in all respects with the conscious intent to mask the truth from the trial court and to keep the decedent's last will from being offered for probate.

### 3. *Extent of injury caused.*

The accused's actions resulted in payment of legal fees by the Winkler estate to the wrong personal representative (the accused), violated the integrity of the legal process, abused the trust of the probate court, and caused the potential of needless worry for Anne Winkler due to the impermissible communication.

### 4a. *Mitigating circumstances.*

We find no significant mitigating factors. The accused purports now to recognize that his conduct was inappropriate, but his statements lack sincerity. He gives the impression more of one who regrets being caught than of one who regrets a course of conduct because of the harm it caused.

### 4b. *Aggravating circumstances.*

The accused has a long history of disciplinary offenses. He was reprimanded for conflict of interest in 1971, admonished for neglect of a legal matter in 1982, admonished for a conflict of interest concerning a closed file in 1983, admonished for yet another matter in 1986, and suspended from the practice of law for 63 days in 1986 for failure to render an accounting or return funds to a client and failure to cooperate with the Bar. *In re Hedrick*, 301 Or 750, 725 P2d 343 (1986).

The facts as we have found them in the present case are particularly disturbing. The accused offered a will for probate that he knew should not be offered in such manner and engaged in a course of conduct that he hoped would keep the appropriate will from ever being offered. He even contacted a represented party directly in an effort to secure control over estate assets.

We conclude that the accused's conduct warrants a two-year period of suspension. Such a sanction is consistent both with the ABA Standards and with case law. *See In re Recker, supra* (neglect of two matters entrusted to accused,

together with making false statement to trial court, justified two-year suspension); *In re Brown*, 298 Or 285, 692 P2d 107 (1984) (lawyer who violated three separate disciplinary rules also prepared and had his client sign a false affidavit in connection with Bar investigation; two-year suspension ordered).

The accused is suspended from the practice of law for a period of two years commencing on the effective date of this decision. The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).