Argued and submitted December 13, 1984, accuseds suspended January 22, rehearing denied February 20, 1985

In re Complaint as to the Conduct of

## JAMES L. HILLER and
## LAURENCE F. JANSSEN,
*Accuseds.*

(83-6; SC S30912)

694 P2d 540

Thomas E. Cooney, Cooney, Crew & Wihtol, Portland, argued the cause and filed a brief for the accuseds.

John M. Junkin, Hillsboro, argued the cause and filed a brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

The Oregon State Bar charges the accused attorneys with violating a statute and a disciplinary rule by making false, misleading and deceitful representations in support of a motion for summary judgment in circuit court. Because both the accused are partners in the same law firm and acted together in the events leading to the charges against them, the charges were consolidated in one proceeding with their consent. For clarity, we refer to each accused by name.

The facts are somewhat complicated but essentially undisputed, except for the accuseds' defense that they acted without the culpable mental state that would make them guilty of the charges. The relevant legal rules provide:

DR 1-102(A)(4) Misconduct.

"(A)    A lawyer shall not:

"* * * * *

"(4)    Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

ORS 9.460(4):

"An attorney shall:

"* * * * *

"(4)    Employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never seek to mislead the court or jury by any artifice or false statement of law or fact."

ORS 9.527(5):

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"* * * * *

"(5)    The member is guilty of wilful violation of any of the provisions of ORS 9.460 or 9.510."[1]

Janssen was retained by a Mr. Wiater to collect a $30,000 debt allegedly owed to Wiater by Ashram Builders, Inc., its president, Payne, and Baunach, and, according to

---

[1] ORS 9.527(5) was ORS 9.480(5) when the Bar's complaint was filed.

Wiater, evidenced by a promissory note payable on demand. Wiater, Payne and Baunach had worked together on some speculative building projects. When Janssen filed an action on the promissory note in Multnomah County Circuit Court, defendants answered with a general denial, an affirmative defense alleging an oral agreement that the loan was due and payable only upon sale by Wiater of two specified pieces of real property, and a counterclaim alleging that the interest rate on the note was usurious.

Janssen was indignant that his client's supposed friends and associates would attempt to renege on repayment of the loan in this fashion. (After checking a recently enacted federal statute, Hiller in fact persuaded defendants' counsel to withdraw the claim of usury as nonmeritorious.) Janssen did not understand how the defendants could claim that a demand promissory note was not payable until the occurrence of a condition, the sale of specified property by plaintiff, that apparently had nothing to do with the loan and was not expressed in the note. He investigated by taking defendants' depositions.

In his deposition, Payne testified that there were two loans. According to Payne, Wiater had agreed to lend the defendants up to $50,000 when a $200,000 loan became available to him. While awaiting this money, Wiater lent them from his personal funds the $30,000 evidenced by the promissory note. When Wiater received the expected loan, the defendants borrowed $30,000 under the original oral agreement and repaid the promissory note in what Payne described as a "bookkeeping" transaction. The loan under the oral agreement, according to Payne, was not repayable until the sale of the specified real property, known as the Phantom Bluffs property. In answering Janssen's question why repayment of the loan was made contingent on the lender's sale of this property, Payne answered that this was an "arbitrary date" that the borrowers expected would give them the use of the money for a year or more.

From Janssen's testimony before the trial board, it is fair to infer that he doubted Payne's and Baunach's story of the oral loan. He was "madder than hops," because he thought their conduct toward Wiater "reprehensible." He asked his younger associate, Hiller, to research whether the defendants

might have engaged in actionable fraud or deceit. He "stewed" about the case for some days. He began to consider what sort of "sale" might satisfy the supposed condition for repayment of the loan, if there was such a condition. Eventually, he asked Hiller to research "what is the minimum we can do to accomplish a sale which would trigger satisfaction of this condition, if it exists."

Hiller reported back that a quitclaim deed would be adequate to constitute a sale. According to Hiller's testimony before the trial board, he looked up "sale" in Words and Phrases and found an Indiana case, *Pachter v. Gray,* 231 Ind 487, 109 NE2d 412 (1952), that contained what Hiller described as "the crucial language" that "[a] sale of real estate 'is the actual transfer of title from grantor to grantee by appropriate instrument of conveyance.' " *Id.* at 490, 109 NE2d at 414. *Pachter v. Gray* itself only quoted this sentence from an 1890 case, in the context of a tax deed that had no similarity to the issue between Wiater and his debtors, but Hiller seized upon the sentence to tell Janssen that a deed of the Phantom Bluffs property to another person would satisfy the alleged condition of the loan agreement.

On the strength of this piece of legal analysis, Janssen suggested and Hiller prepared quitclaim deeds of the real estate to Phyllis Thorne, a secretary and office manager employed in their law firm. He also prepared a reconveyance agreement by which Thorne would reconvey the property to Wiater upon demand and payment of one dollar. Wiater and Thorne separately signed the respective documents, but the deeds were not delivered to Thorne or recorded.

Thereafter, Janssen and Hiller filed in the circuit court a motion for summary judgment in Wiater's action on the promissory note. They attached an affidavit signed by their client which asserted under oath:

"On or about February 17, 1982 I sold two pieces of real property to Phyllis Thorne as indicated on Exhibits B and C. These properties are commonly known as the 'Phantom Bluffs' properties and are referred to as such in the depositions of Mr. Payne and Mr. Baunach."

Exhibits B and C, attached to the motion and affidavit, were the quitclaim deeds. In each deed, J. Drew Wiater "releases and quitclaims to Phyllis Thorne, Grantee, all right, title and

interest" in specified real property. On a printed line beginning "the true consideration for this conveyance is $_____ (Here comply with the requirements of ORS 93.030)," each deed recited that "other value was part or the whole consideration."[2] Also attached were the depositions taken of Payne and Baunach as adverse party witnesses. Neither the attachments nor an accompanying memorandum in support of the motion for summary judgment further identified Phyllis Thorne or the nature of the consideration for the alleged "sale" of the Phantom Bluffs property.

The Oregon State Bar charges that the filing of these documents in order to obtain a summary judgment, against the defendants' allegation that their loan would become due upon sale of the specified property by plaintiff, violated the terms of ORS 9.460(4) and DR 1-102(A)(4) quoted above. The Bar also charged that Janssen violated the same rules by advising Phyllis Thorne not to answer certain questions during her deposition, so as to hinder and delay opposing counsel in learning the facts of the transaction. The trial board and the Disciplinary Review Board found both accused attorneys not guilty of the charges.

■        The obligations stated in ORS 9.460(4) and DR 1-102(A)(4) all deal with honesty, and they unquestionably overlap, but they are not identical. The primary focus of ORS 9.460(4) is on litigation. Its final provision forbids seeking to "mislead the court or jury by any artifice or false statement of law or fact." The beginning of subsection (4), however, is broader. It commands attorneys to employ "such means only as are consistent with truth" in "maintaining the causes confided to" them. It is not limited to misleading the tribunal but extends to dealing less than truthfully also with clients,

---

[2] ORS 93.030(1) requires that:

"All instruments conveying or contracting to convey fee title to any real estate, and all memoranda of such instruments, shall state on the face of such instruments the true and actual consideration paid for such transfer, stated in terms of dollars. As used in this section, 'consideration' includes the amount of cash and the amount of any lien, mortgage, contract, indebtedness or other encumbrance existing against the property to which the property remains subject or which the purchaser agrees to pay or assume. However, if the actual consideration consists of or includes other property or other value given or promised, neither the monetary value nor a description of such other property or value need be stated so long as it is noted on the face of the instrument that other property or value was either part or the whole consideration."

opposing parties or anyone else in maintaining the client's cause.

■    DR 1-102(A)(4) is even broader insofar as its prohibition of dishonesty is not limited to litigation or even to the representation of clients. The words "fraud, deceit or misrepresentation," however, in other contexts connote more detailed elements of knowledge, intent or purpose than the standard of "means consistent with truth" in ORS 9.460(4). Failure to disclose material information as well as express falsehood violates the rule, *In re Greene,* 290 Or 291, 298, 620 P2d 1379, 1382 (1980), but there must be clear and convincing proof that the lawyer had the undisclosed fact in mind and knowingly failed to disclose it. *In re Huffman,* 289 Or 515, 519, 614 P2d 586, 587 (1980).

■    We find that the affidavit submitted by the accused in support of Wiater's motion for summary judgment knowingly and "wilfully" (ORS 9.527(5)) omitted a material fact. The statement that Wiater "sold" the Phantom Bluffs property may be regarded as asserting the legal effect of a transaction rather than misstating the facts of the transaction. The failure to explain the identity of Phyllis Thorne in itself is not material; she might have been a bona fide purchaser for value. This cannot be said of the failure to disclose the character of the transaction alleged to be a "sale," specifically, the existence of the agreement to reconvey and the fact that this alone was claimed to constitute the "value" given as "consideration" for the deeds.

Those facts were the essence of Janssen's and Hiller's theory that a *pro forma* transfer of title without any substantive reality could be a "sale" for purposes of the agreement alleged by the defendants. They were not only material facts, they were indispensable to determining whether Wiater was entitled to summary judgment. Had the affidavit and deeds disclosed that the sole "value" received as "consideration" for transferring the Phantom Bluffs property to Thorne was Thorne's agreement to reconvey the property on demand, the court might be expected to regard the "sale" with skepticism. To avoid this skepticism by failing to disclose the facts is not the use of "such means only as are consistent with truth" but the use of an "artifice." ORS 9.460(4).

■    We therefore hold that Janssen and Hiller violated

ORS 9.460(4). Whether Janssen and Hiller also violated DR 1-102(A)(4) is a different question. They deny that they intended any "dishonesty, fraud, deceit or misrepresentation." They argue that when they merely alleged the sale and attached the deeds, without more, they expected defense counsel to take the initiative to inquire into the facts of the alleged sale, and that they had no intention to deny or falsify those facts. The defendants' counsel in fact did succeed in identifying Phyllis Thorne and took her and Wiater's depositions. Wiater's motion for summary judgment eventually was denied, and the case was settled.

■    We do not interpret "fraud, deceit or misrepresentation" to be three words for the same thing. A misrepresentation becomes fraud or deceit when it is intended to be acted upon without being discovered. We do not find clear and convincing evidence that Janssen and Hiller had such an intention. They apparently expected to defend their "sale," not to disguise it. The circuit judge hearing the summary judgment proceeding stated that he did not believe they intended to mislead the court.

But the fact that they did not intend to deceive or commit a fraud on the court does not acquit them of misrepresentation. As mentioned above, misrepresentation can include nondisclosure, and DR 1-102(A)(4) is not limited to or even primarily concerned with courts.

*In re Greene, supra,* which involved probate rather than civil litigation, said this about misrepresentation by nondisclosure:

> "We view the violation of the disclosure requirements of ORS 9.460(4) and DR 1-102(A)(4) as a serious matter, particularly in the context of an *ex parte* presentation to the judge. The evidence shows that neither the probate judge nor the probate clerks made much, if any, investigation into the merits of such requests. Our experience has been all judges regularly rely upon the candor, honesty and integrity of the lawyer in handling *ex parte* matters which are presented to them. Extremely important judicial decisions are often made in probate cases, injunction cases and domestic relations cases on *ex parte* application of lawyers. Judges must be able to rely upon the integrity of the lawyer."

290 Or at 297, 620 P2d at 1383. The principle of DR

1-102(A)(4) is no different if someone other than a judge is misled by relying on the candor of the lawyer. *See In re Fuller,* 284 Or 273, 586 P2d 1111 (1978). It is quite conceivable, in the setting of a payment conditional upon the occurrence of a sale, that a debtor who is informed by reputable counsel that the required sale has occurred might believe this information and concede the consequence that payment was due without litigating the issue. He should be able to rely on express or implied representations as to facts, even if not as to their legal consequences. Here the existence of the reconveyance agreement, the supposed "consideration," was not disclosed during the depositions; in fact, Wiater denied any such agreement. Its existence surfaced only during the disciplinary proceeding.

A person must be able to trust a lawyer's word as the lawyer should expect his word to be understood, without having to search for equivocation, hidden meanings, deliberate half-truths or camouflaged escape hatches. That trustworthiness is the essential principle embodied in DR 1-102(A)(4). Such trust would have been misplaced in this case, if the debtors had taken at face value these lawyers' assertion, embodied in their client's sworn affidavit and the quitclaim deeds, that the Phantom Bluffs property had been sold for valuable consideration. The transaction was hardly what they had to expect their chosen words to communicate without further disclosure. The failure to make that disclosure but to leave it to investigation by a skeptical opponent was a misrepresentation within the meaning we gave that word in *In re Greene, supra.* Under *In re Greene,* therefore, the accused attorneys also violated DR 1-102(A)(4).

The Bar also charged that Janssen sought to hinder or delay opposing counsel in acquiring information about the "sale" by instructing Phyllis Thorne during her deposition not to answer certain questions. We find Janssen not guilty of that charge.

■ For their violations of ORS 9.460 and DR 1-102(A)(4), both accused attorneys are suspended from the practice of law for four months, effective February 12, 1985. ORAP 11.03. Costs to the Oregon State Bar. ORS 9.536(4).