Argued and submitted September 1, accused is disbarred commencing on the effective date of this decision November 4, reconsideration denied December 14, 1993

In re Complaint as to the Conduct of

## YOSEF YACOB,
*Accused.*

(OSB 89-34, 90-61, 90-65, 91-4, 92-36; SC S39964)

860 P2d 811

Susan D. Isaacs, Beaverton, argued the cause and filed the briefs for the accused.

Martha M. Hicks, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the response for the Oregon State Bar.

PER CURIAM

## PER CURIAM

In this lawyer discipline case, the accused admits seven violations of disciplinary rules or statutes but contends that those violations were not intentional or willful. The Oregon State Bar (Bar) charges additional violations that the accused denies. He also contests the severity of the sanction recommended, urging that extenuating circumstances justify a less severe sanction than the two-year suspension assessed by the trial panel. The Bar requests that, "at a minimum," a two-year suspension from practice be imposed and asserts that disbarment would "not be inappropriate" in this matter. This court finds the accused guilty of 13 disciplinary rule or statute violations and disbars him.

The numerous disciplinary charges against the accused arise from four different kinds or categories of incidents. We will consider each category separately. Where a violation of a disciplinary rule or statute is established, we will determine the accused's accompanying state of mind. After the questions of guilt or innocence of the charges and accompanying state of mind have been decided, we will assess the appropriate sanction for all violations found.

### ACTS OF VIOLENCE

A. *Menacing Another.* A little more than a day after an incident in which the accused kicked a former employee, the accused encountered her brother on the highway. Both men stopped their vehicles. In the course of the conversation with the former employee's brother, the accused pulled a loaded shotgun from his vehicle and threatened the brother with it.

The accused pleaded no contest to a criminal charge of menacing and was found guilty by a trial court under ORS 163.190.[1] The Bar charges the accused with violating both DR 1-102(A)(2), quoted in note 3 below, and ORS 9.527(2) thereby. ORS 9.527 in part provides:

---

[1] ORS 163.190 provides:

"(1) A person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury.

"(2) Menacing is a Class A misdemeanor."

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, * * * it appears to the court that:

"(1)   The member has committed an act or carried on a course of conduct of such nature that, if the member were applying for admission to the bar, the application should be denied;

"(2)   The member has been convicted in any jurisdiction of an offense which is a misdemeanor involving moral turpitude or a felony under the laws of this state, * * *

"* * * * *

"(4)   The member is guilty of willful deceit or misconduct in the legal profession[.]"[2]

In Oregon, the result of a plea of no contest is a conviction of crime. ORS 135.345. Therefore, the requirement of ORS 9.527(2) that an accused be "convicted in any jurisdiction of an offense" is satisfied. The question remains whether the conviction, being of a misdemeanor only, is of a crime involving moral turpitude. The accused admits that it is. That admission is correct. The accused violated ORS 9.527(2).

Concerning the act of pointing a loaded gun at his former employee's brother, the accused contends that in this act of violence he lacked the intent to harm. That claim is not persuasive. The accused has been found guilty of intentionally placing another person in fear of serious harm.

B. *Kicking Another.* The accused engaged in an intimate affair with a former employee. She ended the affair. After drinking alcohol, the accused went to the former employee's house and engaged her in a discussion. She was seated on the floor with her legs crossed, facing the accused. He told her that she was seeing another man. When the accused, who was standing, heard her response, he kicked her in the face. She then swung her body around, placing her back to the accused, but remained huddled on the floor while

---

[2] ORS 9.490 also provides:

"The board of governors, with the approval of the state bar given at any regular or special meeting, shall formulate rules of professional conduct, and when such rules are adopted by the Supreme Court, shall have power to enforce the same. Such rules shall be binding upon all members of the bar."

taking no other action to defend herself. He kicked her several more times.

The accused's attack on his former employee was resolved by civil compromise of criminal assault charge, not a conviction. The Bar charges the accused with a violation of DR 1-102(A)(2).[3] The accused contends that the assault does not reflect on his fitness to practice law because his violent acts in this incident were related to his personal affairs rather than to his professional activities.

There is no need to settle the legal question whether the kicking episode violates DR 1-102(A) because, even without a holding that the kicking episode is a violation, the court would disbar the accused. Accordingly, we move on to charges of other violations.

## FALSE ADVERTISING

The accused placed advertisements in the yellow pages of local telephone directories for each of two years. Those advertisements indicated that the accused maintained a branch law office at Swan Island. The Bar charges the accused with violating DR 2-101(A)(1).[4] Although the accused and his agents negotiated toward a lease of office space in that area, no lease was completed, and the accused did not establish any law office at or near Swan Island. The accused argues that his efforts to lease property, even though no lease was entered into, excuse the misrepresentation, at

---

[3] DR 1-102(A) provides in part:

"It is professional misconduct for a lawyer to:

"(1) Violate these disciplinary rules * * *;

"(2) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law;

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(4) Engage in conduct that is prejudicial to the administration of justice[.]"

[4] DR 2-101(A)(1) provides:

"(A) A lawyer shall not make any false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

"(1) Contains a material misrepresentation of fact or law or omits a fact necessary to make the statement considered as a whole not materially misleading[.]"

least to the extent that it is not intentionally dishonest.[5] We hold that the advertisement, relating directly to the accused's practice of law, is sufficiently related to his conduct in the legal profession to come within the terms of DR 2-101(A)(1), and that the accused violated that rule as charged.

## WITHHOLDING CLIENTS' FUNDS

A. *Cost Refund*. In two instances, the accused unilaterally withheld client funds. In the first, a client seeking dissolution contacted one of the accused's three branch offices. The matter was handled by one of the accused's salaried lawyers whose relationship with the accused's office terminated during the course of the representation of the dissolution client. The accused's office filed a dissolution in Multnomah County. Filing fees were paid with funds advanced for costs by the client. Thereafter, upon learning that the client's spouse previously had filed for dissolution in Yamhill County, the accused's associate applied for and received a refund of those filing fees from the Circuit Court for Multnomah County. The refund was made by a check payable to the named client, but was mailed to and directed in care of the salaried attorney. The accused personally endorsed the client's name on the check and deposited it in his lawyer's trust account of his firm. The accused did not notify the client that the refund was received nor that the money she had paid for filing fees was in the law firm's trust account.

The Bar charges violation of DR 1-102(A)(3), quoted in note 3 above (dishonesty or deceit); ORS 9.527(4), quoted in text above (willful deceit or misconduct in the legal profession); DR 9-101(B)(1), (3), and (4), quoted in note 6 below (failure to notify client of receipt of funds, to pay them promptly to client, or to maintain records showing the client's interest in the funds).

This court has considered a variety of cases in which a lawyer has endorsed a check payable to the lawyer's client or someone else other than the lawyer. Two such cases provide sufficient background for reaching a decision in the present case.

---

[5] "Willful deceit or misconduct in the legal profession" is required for a violation under ORS 9.527(4). The Bar did not charge a violation of that statute.

This court observed in *In re Sassor*, 299 Or 570, 576, 704 P2d 506 (1985):

> "The accused defends his actions by contending that he believed that the check had been delivered to his client with authority to endorse the check and that his course of action was in compliance with the decree of dissolution. There is no evidence that the accused intended to keep the money for himself, but the record is clear that the accused knew he had no authority from his client's former husband to sign the husband's name to the check. He therefore engaged in misrepresentation proscribed by DR 1-102(A)(4) and we conclude that he is guilty of a violation thereof."

And, as this court further observed in *In re Magar*, 312 Or 139, 142, 817 P2d 289 (1991):

> "In any event, the accused misses the point. He negotiated an instrument without authority and forwarded it through his bank (which had notice) to the payor bank and its client (which did not), an act of dishonesty and misrepresentation with respect to the endorsement. Even when dealing for him or herself, and not for any client, a lawyer is one of those 'who profess the law, [and thereby] profess honest and dispassionate resolution of conflicts.' *In re Hopp*, 291 Or 697, 702, 634 P2d 238 (1981). Self-help of this kind was utterly inconsistent with those professions."

■ Concerning the violations of disciplinary rules and statutes relating to this endorsement of his client's name, the accused argues that he subjectively believed that a salaried lawyer handling the case — who had left the law firm at about that time and who could not be contacted — previously had told the client that the case had become contested and, therefore, that more attorney fees would be due. That argument fails to address the main issues of whether the client had been told that a refund check had been received, endorsed by others without the client's consent, and placed in the accused's trust account, and whether the accused deceitfully endorsed the client's name on the check.

The accused's handling of the trust funds violates each of the three subsections of DR 9-101(B) as charged.[6] He

---

[6] DR 9-101(B) requires that:

"A lawyer shall:

"(1) Promptly notify a client of the receipt of the client's funds, securities or other properties.

failed to notify the client of the receipt of the funds; he failed to account to the client for those funds; and he failed to maintain records from which he could account. By endorsing another person's name on the check, the accused also is guilty of a willful violation described by ORS 9.527(4) and of deceit, violating DR 1-102(A)(3). As before, we consider the accused's state of mind accompanying those violations and find it to be intentional.

B. *Disability Payments*. In the second instance, another salaried lawyer working for the accused in another of the accused's branch offices charged a new client $150 as a flat fee and wrote that the flat fee was to "terminate a guardianship." That was an inaccurate description of the work requested by the client. The client had, a number of years earlier, been conservator for her disabled nephew who received social security disability payments. That conservatorship had been terminated several years earlier, and it appears that the order terminating the conservatorship was delivered to the accused's salaried associate and was in the file when the accused later saw that file. What the client sought, instead of termination of an already terminated guardianship, was that the lawyer help her find a third person to substitute for her in the task of assisting her nephew. The third person was needed in order to qualify to receive the nephew's disability checks directly from the social security agency, relieving the client of that responsibility. The third person would then pay any expenses related to the disabled nephew from those funds.

For some reason, the salaried lawyer asked that over $3,300 — which the client had saved from the past social security payments for the client's nephew — be deposited with the law firm. The client turned those funds over to the firm as requested. They were placed in the firm's trust

---

"* * * * *

"(3) Maintain complete records of all funds * * * of a client coming into the possession of the lawyer and render appropriate accounts to the lawyer's client regarding them. * * *

"(4) Promptly pay or deliver to a client * * * the funds * * * which the client is entitled to receive. * * *"

account. Thereafter, the relationship of that salaried lawyer with the accused's law firm was terminated.

Although a written flat-fee agreement had been used to establish the $150 initial amount, it appeared to the accused when he reviewed the file that substantially more had been earned by his departed salaried employee. The accused apparently did not grasp the limited nature of the client's actual request for assistance. The accused decided that much more should have been charged. Accordingly, the accused withheld an additional sum from the $3,300 in his trust account and, after a time, refunded the remainder of the nephew's funds to the former client. At the time that the accused withheld the additional sum, he knew about the flat-fee agreement. He also knew that the money belonged to the nephew, who had never been his client and who had not requested any services.

■ The accused denies the charge of exacting an excessive fee in violation of DR 2-106(A),[7] which is the only charge made by the Bar regarding this second instance of withholding client funds. As part of his defense, the accused points out that the additional fee amount, although withheld from the former client, was not withdrawn by him from his trust account.

Under the circumstances of this case, leaving the money in his trust account provides the accused with no defense to the excessive-fee charge. Withholding the sum in the first place violated DR 2-106(A) as charged, because any work done was agreed to be covered by the flat-fee agreement and the client did not request additional work. *See In re Gastineau*, 317 Or 545, 551, 857 P2d 136 (1993) (exacting a second fee for the same work as that for which first flat fee was paid violates excessive fee prohibition).

The accused's mental state, when he directed that a portion of the money be withheld in trust while the remainder was refunded in response to the client's demands, was that of acting intentionally to retain funds that he knew belonged to the disabled nephew.

---

[7] DR 2-106(A) provides: "A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee."

## FALSIFYING DOCUMENTS

The dissolution client, mentioned in the previous section of this opinion, terminated the accused's professional representation and complained to the Bar. The Bar requested an explanation from the accused, including what happened to costs advanced by the client. As stated, those costs initially were paid as filing fees in Multnomah County but, at the request of the accused's firm, were refunded to that firm by a check made payable to the client.

When the accused could not locate the client's file,[8] he responded to the Bar by a letter of explanation that enclosed several documents that the accused caused to be created (on the ground that they should have been in the file had he been able to locate it). The accused presented the documents as genuine, not as ones that he had created later to answer the Bar's inquiry. One of the created documents was a pre-printed form fee agreement covering the dissolution case, which indicated that the amount of fees would change if the dissolution became contested. Two other documents created for the purpose of responding to the Bar's inquiry were purported letters from a salaried lawyer, no longer in the accused's employ, to the client. The manufactured letters explained the need for additional fees and the fact that a cost refund had been received in trust.[9] The accused represented to the Bar, by giving them to the Bar as a part of what he represented was the file from his office, that the letters were genuine, when he knew that they were not. The Bar charged the accused with violating ORS 9.527(1) and (4), quoted in text above; DR 1-102(A)(3) and (4), quoted in note 3 above; and DR 1-103(C) ("A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries" from the Bar).

The accused contends that there was no misrepresentation, because he had reason to believe that the salaried lawyer, who previously handled the dissolution client's case,

---

[8] Apparently, some member of the accused's staff gave the file to the client without informing the accused that the file was in the former client's hands.

[9] The accused's former salaried employee told the accused that a letter stating the need for additional fees had been sent, but did not say that the client had been advised of the receipt of the refund.

had notified the client about the fee refund and the increase in fees. The accused contends that this notice, if given, probably would have been by letter, because the client was deaf and could not communicate orally with her lawyer. Creating and transmitting those documents was, at least, a misrepresentation.

The accused also contends that, even if his acts concerning the manufactured documents are considered misrepresentations, they should not be classified as dishonest, because he did not intend to mislead the Bar. The accused bases this contention on his claimed belief that the salaried lawyer indeed had sent letters like those that the accused generated and that copies of those letters would have been in the file, had the genuine file been located. The accused further contends that the mental state accompanying delivery of the manufactured documents was not an intention to misrepresent, but simply knowledge that the Bar might be misled into believing that the documents were authentic.

There is a distinction, as the accused asserts, between misrepresentation occurring negligently and an affirmative act of dishonest or intentional misrepresentation. The accused relies on *In re Hiller*, 298 Or 526, 533, 694 P2d 540 (1985), to support his contention that the misrepresentation in this case, if any, should not be classified as dishonest. In *Hiller*, this court said:

> "We do not interpret 'fraud, deceit or misrepresentation' to be three words for the same thing. A misrepresentation becomes fraud or deceit when it is intended to be acted upon without being discovered. We do not find clear and convincing evidence that Janssen and Hiller had such an intention. They apparently expected to defend their 'sale,' not to disguise it. The circuit judge hearing the summary judgment proceeding stated that he did not believe they intended to mislead the court.

> "But the fact that they did not intend to deceive or commit a fraud on the court does not acquit them of misrepresentation. As mentioned above, misrepresentation can include nondisclosure, and DR 1-102(A)(4) is not limited to or even primarily concerned with courts." *Ibid.*

In *In re Hedrick*, 312 Or 442, 446, 450, 822 P2d 1187 (1991), this court held that leading a probate court to believe

that a will offered for probate was the last will of the decedent, when the accused knew that it was not, was a disciplinary violation. This court explained:

> "We find, by clear and convincing evidence, that the accused made a misrepresentation in the petition that violated DR 1-102(A)(3). *See In re Hiller*, 298 Or 526, 532-33, 694 P2d 540 (1985) (a misrepresentation occurs when a lawyer has an undisclosed material fact in mind and knowingly fails to disclose it).
>
> "* * * * *
>
> "The facts as we have found them in the present case are particularly disturbing. The accused offered a will for probate that he knew should not be offered in such manner and engaged in a course of conduct that he hoped would keep the appropriate will from ever being offered." *Ibid*.

Obviously, the documents that the accused created helped to place the accused's conduct in retaining the refund in the best possible light. It is equally obvious that the documents themselves were falsehoods. The further representation that they were genuine was likewise false. We find that the accused's delivery of the fabricated documents to the Bar, with the intention that the Bar consider the documents genuine, is an intentional and false representation that is dishonest in nature. The accused, therefore, violated DR 1-102(A)(3).

We also find, as the Bar argues, that this conduct prejudiced the administration of justice. As the court said in *In re Boothe*, 303 Or 643, 654, 740 P2d 785 (1987), where the issue was whether the "administration of justice" includes Bar disciplinary proceedings:

> "Finally (and, perhaps, most to the point), bar disciplinary proceedings determine whether an accused is fit to practice law in the courts of this state — a question as close to the heart of the 'administration of justice' as any could be. We conclude that bar proceedings further 'the administration of justice' within the meaning of *former* DR 1-102(A)(5), and the accused is guilty of violating that rule." (Footnote omitted.)

*See also In re Haws*, 310 Or 741, 748, 801 P2d 818 (1990) (the prejudice aspect of DR 1-102(A)(4) requires either a single act substantially harming the administration of justice or

repeated conduct causing some harm to the administration of justice). Based on the foregoing discussion of the applicable law, we hold that the accused also violated DR 1-102(A)(4). The accused is, therefore, guilty of all violations charged in connection with fabricating the file that he provided to the Bar.

## SANCTION

The Bar seeks at least as long a period of suspension as the two years assessed by the trial panel. The Bar also asserts that disbarment would not be an inappropriate sanction in this case. The accused seeks a lesser period of suspension and specifically suggests that a reprimand is sufficient sanction concerning the false advertising violation. The ABA Standards for Imposing Lawyer Sanctions (1991) (ABA Standards), which this court uses as guidelines, call for assessing the state of mind accompanying a violation, classifying the duty violated, assessing actual or potential harm and its seriousness, and determining what aggravating and mitigating factors are present, if any.

The accused's mental state accompanying the violations was intentional, as we have noted. Where a violation involved a client, the potential for harm to the client was serious; where the violation did not involve a client, the potential or actual harm to others was serious. The accused violated duties to his clients concerning their funds, duties owed to the profession in the area of responding to investigations honestly, and duties owed to the public by the legal profession concerning settlement of disputes through peaceful means.[10] The violation of at least some of those duties was accompanied by a selfish motive to obtain personal benefit, an aggravating factor. *See* ABA Standard 9.22(b) (selfish motive). The accused's repeated misconduct against those who are weak or vulnerable appears to be a pattern of misconduct. *See* ABA Standard 9.22(c) (pattern of misconduct) and (h) (vulnerability of victim). The accused was experienced in

---

[10] In *In re Kneeland*, 281 Or 317, 321-22, 574 P2d 324 (1978), this court indicated the broad scope of this duty by stating:

"The conduct of the accused was also in violation of the duty of all lawyers to avoid such conduct as will tend to erode public confidence in the law and in lawyers."

the practice of law. *See* ABA Standard 9.22 (i) (substantial experience).

There is a further serious aggravating factor: the accused's lack of candor when responding to the Bar's inquiries. *See In re Wolf*, 312 Or 655, 663-64, 826 P2d 628 (1992) ("[An] aggravating factor is lack of candor during the disciplinary process. ABA Standard 9.22(f). * * * In short, the accused still does not recognize fully the impact of his misconduct on his clients, the public, and the legal system.").

We view the fabrication of documents as a very serious violation. The accused's intentional and deliberate misrepresentation to the Bar is particularly incompatible with the integrity in professional life that is required to practice law.

The accused makes various arguments, apparently claiming mitigation, to support a less severe sanction. In one, the accused attempts to shift the issue from the act of menacing to the reason why he had a loaded shotgun in his automobile. He explains why the gun was there, rather than coming to grips with the fact that he threatened another person with it. The reasons why the accused had a gun are not relevant to the facts of his actual use of it in the context of this case. Those reasons provide no mitigation. Neither do his other assertions.[11]

However, the record does not disclose any prior disciplinary actions against the accused. Under ABA Standard 9.32(a) (absence of prior disciplinary record), that is a mitigating factor. That mitigating factor does little to overcome the seriousness of the accused's many disciplinary violations and the several aggravating factors.

The accused is disbarred, commencing on the effective date of this decision.

---

[11] There is perhaps some evidence of remorse concerning one instance of withholding another's funds. The accused reversed his former assertion that he was entitled to additional fees. It is, however, not clear whether this reversal resulted from remorse or, rather, from concern about the effect on the trial panel of his client's testimony about having to mortgage her property to pay her nephew's bills. The mitigating factor of remorse is not established here.