965 P.2d 806

**Harry KIM, Jr., and H K Builders, Inc., Appellants–Appellants,**

v.

**CONTRACTORS LICENSE BOARD, Appellee–Appellee.**

**No. 21152.**

Supreme Court of Hawai'i.

Oct. 28, 1998.

Emlyn H. Higa, Honolulu, On the Briefs, for Appellants-Appellants.

Bobbi W.Y. Lum, Staff Attorney, Regulated Industries Complaints Office, On the Briefs, Honolulu, for Appellee-Appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Appellants-appellants Harry Kim, Jr. and H K Builders, Inc. appeal the First Circuit Court's orders affirming Appellee-appellee Contractors License Board's final decision suspending Appellants' licenses for six months and fining them, jointly and severally, $2,000.00. Appellants argue that the circuit court erred (1) in applying the "clearly erroneous standard of review to the issue of statutory construction" and (2) concluding that Hawai'i Revised Statutes (HRS) § 444–17(10) (1993) [1] does not require intent.

First, Appellants misread the circuit court's decision, rendering their first point on appeal meritless. Second, although the circuit court correctly concluded that HRS § 444–17(10) does not require intent, we affirm for different reasons.

## I. BACKGROUND

On May 29, 1992, Harry Kim applied for a contractor's license from the Contractors Li-cense Board (Board). Although all of his answers were correct, Kim did not pass all parts of the examination. On December 30, 1992, Kim applied again. He simply photocopied the first application and changed only the answer to the question regarding previous applications. Kim, again, did not pass all parts of the examination.

On September 20, 1993, Kim applied a third time. H K Builders also applied for a license. Kim again photocopied his application. Kim, who also applied as the Responsible Managing Employee for H K Builders, testified that he did not read the applications before signing or submitting them.

The application conspicuously provides at the top of the first page: "Each applicable question must be fully and truthfully answered. Any material misrepresentation is grounds for refusal or subsequent revocation of license." At its end, immediately above the signature line, the application repeats the previous statement and further provides: "The undersigned hereby apply for license pursuant to the provisions of Chapter 444, Hawai['ji Revised Statutes and *vouch for the truth and accuracy of all statements, answers and representations made in this application*, including all supplementary statements hereto attached." (Emphasis added.)

The Regulated Industries Division of the Department of Commerce and Consumer Affairs petitioned for disciplinary action against Kim and H K Builders on February 15, 1995, for violations of HRS Chapters 436B [2] and 444. On April 8, 1996, the hearings officer found and concluded in pertinent part:

1. Respondent Kim was licensed as a contractor by the Contractor's License Board ("Board") on January 25, 1994, Li-

---

1. HRS § 444–17 provides in relevant part:
   **Revocation, suspension, and renewal of licenses.** In addition to any other actions authorized by law, the board may revoke any license issued pursuant to this section, or suspend the right of the licensee to use a license, or refuse to renew a license for any cause authorized by law, including but not limited to the following:
   . . . .
   (10) Misrepresentation of a material fact by an applicant in obtaining a license. . . .

2. HRS § 436B–19 (1993) provides in relevant part:

   **Grounds for refusal to renew, reinstate, or restore and for revocation, suspension, denial, or condition of licenses.** In addition to any other acts or conditions provided by law, the licensing authority may refuse to renew, reinstate, restore, or may deny, revoke, suspend, or condition in any manner, any license for any one or more of the following acts or conditions on the part of the licensee or the applicant thereof:
   . . . .
   (5) Procuring a license through fraud, misrepresentation, or deceit. . . .

cense No. CT 18771. Respondent Kim holds a license in the "B" classification, and is the Responsible Managing Employee ("RME") of Respondent H K Builders.

2. H K Builders was licensed as a contractor by the Board on January 25, 1994, License CT 18770. Respondent H K Builders holds a license in the "B" classification.

3. From May 1990 to approximately September 1993, Respondent Kim was the president and supervisor of Land Data & Research Corporation ("Land Data") License No. CT 15991.

4. On May 29, 1992, Respondent Kim submitted an Application for Contractor's License ("Application") for the purpose of becoming the RME of Land Data. . . .

. . . .

8. On June 24, 1993, Land Data filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code with the U.S. Bankruptcy Court for the District of Hawaii. Respondent *Kim signed the Voluntary Petition* on behalf of Land Data. The Final Decree was filed on May 12, 1995.

9. On September 20, 1993, Respondent Kim submitted an Application for the purpose of becoming the RME for Respondent H K Builders.

10. On September 20, 1993, Respondent H K Builders submitted an Application. The Application was signed by Angie Kim, its President/Treasurer/Secretary, and Respondent Kim, as its RME.

11. In each of the Applications submitted on September 20, 1993, Respondents Kim and H K Builders answered "No," to the following questions:

7. Are there now any unpaid past due bills or claims for labor, materials, or services, outstanding and unsatisfied, as a result of the operations of any person listed under "Personnel of Applicant" or any construction organization in which any such person was a member of the personnel?

9. Has any person listed under "Personnel of Applicant" or has any construction organization in which any such person was a member of the personnel ever been adjudicated as bankrupt; or is any person listed under "Personnel of Applicant" or any construction organization in which any such person is a member of the personnel, presently in the process of bankruptcy proceedings?

. . . .

13. *In the event that an applicant for a contractor's license answers "Yes" to the questions set forth in paragraph 11 above, the Board will conduct a further review of the application. Based on the information supplied by the applicant, the Board may request that the applicant appear before the Board to provide additional information about the unpaid bills or bankruptcy proceedings. If the Board has concerns about the applicant's qualifications, the Board may issue a conditional license or even deny the issuance of a license.*

14. Respondent Kim testified that he "just signed" the second and third applications without reviewing them carefully, and that he had no intent to deceive the Board or anyone else.

. . . .

### III. *CONCLUSIONS OF LAW*

. . . .

There is no dispute that Respondents' answers to questions 7 and 9 of their September 20, 1993 Applications were incorrect. Based on evidence presented, the *Hearings Officer finds that Respondents did not intend to deceive the Board.* However, the *Hearings Officer finds that Respondents were careless and negligent* in not ensuring that all the answers were accurate. *The issue to be determined is whether Respondent's conduct constituted misrepresentation, in violation of HRS §§ 436B–19(5) and 444–17(10).* Petitioner argued that Respondents' false statements, without a showing of an intent to deceive, constituted misrepresentation. Respondents argued that an intent to deceive must be an element of misrepresentation.

In *In the Matter of the Real Estate Broker's License of Marilyn S. Knutson, dba Knutson & Associates,* REC–91–2 (Commission's Final Order July 24, 1992), the Real Estate Commission rejected prior orders which adopted the elements of

fraud in defining misrepresentation (which included an intent to deceive) and instead, adopted the following definition of misrepresentation:

> Any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts. An untrue statement of fact. An incorrect or false representation. That which, if accepted, leads the mind to an apprehension of a condition other and different from that which exists[.] *Id.* at 7. In the absence of current Board orders defining misrepresentation, the Hearings Officer recommends that the Board adopt the definition approved by the Real Estate Commission in the *Knutson* case. Accordingly, the Hearings Officer concludes that Respondents violated HRS § 444–17(10).

(Emphases added.)

After the Board adopted the hearings officer's findings of fact (FOF) and conclusions of law (COL), the Board, on August 28, 1996, suspended the Appellants' licenses for six months and fined them, jointly and severally, $2,000.00. Appellants appealed this decision on September 30, 1996. The circuit court affirmed the Board's order adopting the hearing officer's FOFs and COLs on June 25,

1997,[3] and affirmed the Board's $2,000.00 fine on October 23, 1997. The Appellants timely appealed.

## II. *STANDARD OF REVIEW*

When reviewing a circuit court's review of an administrative agency's decision, the appellate court essentially conducts a secondary appeal. *See Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan,* 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998); *Gray v. Administrative Dir. of Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997); *University of Hawai'i Professional Assembly v. Tomasu,* 79 Hawai'i 154, 157, 900 P.2d 161, 164 (1995); *Dole Hawaii Division–Castle & Cooke, Inc. v. Ramil,* 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990). This court must determine whether the circuit court was right or wrong in its decision, pursuant to the standards set forth in HRS § 91–14(g).[4] Our review is "qualified by the principle that the [agency's] decision carries a presumption of validity and [the a]ppellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences." *Tomasu,* 79 Hawai'i at 157, 900 P.2d at 164 (citations omitted and brackets added); *see also Hardin v. Akiba,* 84 Hawai'i 305, 309–310, 933 P.2d 1339, 1343–344 (1997).

---

3. The circuit court stated the following in its June 25, 1997 order:

The Court considered the Record on Appeal, the written briefs, and the arguments of counsel, and upon good cause shown, the Court finds and concludes as follows:

1. The decision by the Hearings Officer in the administrative proceeding below is supported by reliable, probative and substantial evidence. Pursuant to the standard of review as set forth in HRS § 91–14(g), and *Dole Hawaii Division—Castle & Cooke, Inc. v. Ramil,* 71 Haw. 419, 794 P.2d 1115 (1990) and *Camara v. Agsalud,* 67 Haw. 212, 685 P.2d 794 (1984), the findings, conclusions and the decision of the Hearings Officer are not clearly erroneous.

2. The decision of the Hearings Officer is entitled to deference by the Court because it is well-supported by the evidentiary record. *Medeiros v. Hawaii County Planning Commission,* 8 Haw.App. 183, 797 P.2d 59 (1990).

3. The plain language of HRS § 444–17(10) does not require that an intent to deceive is an essential element of misrepresentation for the purpose of review and consideration of an application for professional license.

4. The applicable standards of review for decisions issued by administrative agencies are supplied by HRS § 91–14(g) (1993), providing in relevant part:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of this agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Findings of fact will not be disturbed unless clearly erroneous. *See Furukawa v. Honolulu Zoological Society*, 85 Hawai'i 7, 12, 936 P.2d 643, 648, *reconsideration denied*, 85 Hawai'i 196, 940 P.2d 403 (1997) (citation omitted). "A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *State v. Kane*, 87 Hawai'i 71, 74, 951 P.2d 934, 937 (1998); *see also Britt v. United States Auto. Ass'n*, 86 Hawai'i 511, 516, 950 P.2d 695, 700 (1998). "[T]he interpretation of a statute ... is a question of law reviewable *de novo.*" *Gray*, 84 Hawai'i at 144, 931 P.2d at 586 (some brackets added and some in original).

## III. *DISCUSSION*

### A. *The Circuit Court Applied the Proper Standard when Reviewing HRS § 444–17(10).*

Appellants argue that the circuit court applied the clearly erroneous standard when reviewing statutory construction. Appellants correctly point out that the proper standard of review is *de novo.* Clearly, however, the circuit court did not give any deference to the hearings officer's interpretation of the statute and, indeed, looked at the statute anew.

The circuit court stated that "[t]he plain language of HRS § 444–17(10) does not require that an intent to deceive is an essential element of misrepresentation for the purpose of review and consideration of an application for professional license." By the very language of the circuit court's order, and its analysis of the statute, the circuit court did not apply the clearly erroneous standard. Appellants' first point on appeal is, therefore, meritless.

### B. *The Circuit Court Rightly Concluded that HRS § 444–17(10) Does Not Require Intent.*

1. *Material misrepresentation does not require intent.*

Appellants second point of error on appeal presents an issue of statutory construction. Appellants argue that the term "misrepresentation," as included in HRS § 444–17(10), requires intent. Appellees, of course, argue that the statute does not. This case, therefore, requires an interpretation of the statute governing the revocation, suspension, and renewal of contractors' licenses.

"The starting point in statutory construction is to determine the legislative intent from the language of the statute itself." *State v. Kaakimaka*, 84 Hawai'i 280, 289, 933 P.2d 617, 626, *reconsideration denied* 84 Hawai'i 496, 936 P.2d 191 (1997) (quoting *State v. Ortiz*, 74 Haw. 343, 351–52, 845 P.2d 547, 551–52 (citations omitted), *reconsideration denied*, 74 Haw. 650, 849 P.2d 81 (1993)).

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(10) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool. *Gray*, 84 Hawai'i at 148, 931 P.2d at 590 (quoting *State v. Toyomura*, 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be

called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993). *Korean Buddhist Dae Won Sa Temple of Hawaii*, 87 Hawai'i at 229–30, 953 P.2d at 1327–28 (quoting *State v. Cullen*, 86 Hawai'i 1, 8–9, 946 P.2d 955, 963–64 (1997) (some brackets in original and some added)).

▉▉▉▉ "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed people in two or more different senses." *State v. Toyomura*, 80 Hawai'i 8, 19, 904 P.2d 893, 904 (1995) (citing 2A N. Singer, *Sutherland Statutory Construction*, § 45.02, at 6 (5th ed.1992)) (internal quotation marks omitted). "[A] rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable[.]" *State v. Jumila*, 87 Hawai'i 1, 9, 950 P.2d 1201, 1209 (1998) (quoting *Keliipuleole v. Wilson*, 85 Hawai'i 217, 221–22, 941 P.2d 300, 304–05 (1997) (brackets, internal quotation marks, and citations omitted)). "The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality." *State v. Arceo*, 84 Hawai'i 1, 19, 928 P.2d 843, 861 (1996) (citation and internal quotation marks omitted).

Turning to the instant case, the hearings officer, when interpreting the statute, framed the primary question as whether Appellants' conduct constituted misrepresentation. The more precise question, however, is whether Appellants' conduct constituted a *material* misrepresentation. HRS § 444–17(10) provides that a "misrepresentation of a material fact" shall warrant the Board to revoke, renew, or suspend a license. As the circuit court stated, the language of HRS § 444–17(10) is plain and unambiguous.

Although Chapter 444 does not define "*material* misrepresentation," the term's common understanding can be found in both *Black's Law Dictionary* 977 (6th ed.1990) and the Restatement (Second) of Contracts

§ 159 (1981) (Restatement of Contracts). *Black's* defines material misrepresentation as one that "relates to *a matter upon which plaintiff could be expected to rely* in determining to engage in the conduct in question.... In law of deceit, *a statement or undertaking of sufficient substance* and importance as to be the foundation of an action if *such representation is false.*" (Emphases added.) According to the Restatement of Contracts § 159, misrepresentation [5] is "an assertion that is not in accord with the facts." The commentary provides that

> an assertion *need not be fraudulent to be a misrepresentation.* Thus a statement intended to be truthful may be a misrepresentation because of *ignorance or carelessness,* as when the word "not" is inadvertently omitted or when inaccurate language is used. But a misrepresentation that is not fraudulent has no consequences under this Chapter unless it is *material.*

Restatement of Contracts § 159, cmt. a (emphases added). The commentary to § 162 also explains that "[a]lthough a fraudulent misrepresentation need not be material in order to entitle the recipient to relief ..., a non-fraudulent misrepresentation will not entitle him to relief unless it is material." Restatement of Contracts § 162, cmt. c.

In support of Appellants' implicit argument that HRS § 444–17(10) is ambiguous and that "misrepresentation" as contained therein requires intent, they rely upon *Swan Creek Communications, Inc. v. Federal Communications Commission*, 39 F.3d 1217 (D.C.Cir.1994). The *Swan Creek* court succinctly pointed out that the Federal Communications Commission (FCC) "defined misrepresentation as 'an intentional misrepresentation of fact intended to deceive.'" 39 F.3d at 1222 (citing *Silver Star Communications–Albany, Inc.*, 3 F.C.C.R. 6342, 6349 (Rev.Bd.1988)). *Swan Creek*, therefore, is distinguishable from the instant case. Not only does HRS § 444–17(10) not

---

5. Similarly, the Restatement (Second) of Torts § 552C (1977) addresses liability for innocent misrepresentation:

(1) One who, in a sale, rental or exchange transaction with another, makes a misrepresentation of a material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it, is subject to liability to the other for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation, *even though it is not made fraudulently or negligently.* (Emphasis added.)

define "material misrepresentation" as intentional, but also the Board specifically concluded, in contrast to the FCC's conclusion, that material misrepresentation as contained within HRS § 444–17(10) does not require intent.

The Board contrastingly urges this court to look first to the surrounding language of HRS § 444–17. *See Mathewson v. Aloha Airlines, Inc.,* 82 Hawai'i 57, 71, 919 P.2d 969, 983 (1996). For example, HRS §§ 444–17(1), (4), (5), (6), (12), (13), and (14) require a level of intent, such as dishonest, fraudulent, deceitful, or wilful [6] conduct. HRS § 444–17(10) is conspicuously silent in describing misrepresentation.

Looking beyond the statute, the Board relies upon attorney discipline cases where misrepresentation is defined as "a broad term encompassing nondisclosure of a material fact; it need not be done with the intent to deceive or commit a fraud." *In re Conduct of Leonard,* 308 Or. 560, 784 P.2d 95, 100 (Or.1989) (citing *In re Conduct of Hiller,* 298 Or. 526, 694 P.2d 540, 543–44 (Or.1985)). More closely related to the instant case, the Virginia Court of Appeals stated, when assessing a statute prohibiting "*any* false statement or misrepresentation of fact" in a building permit:

> We recognize that this deficiency [in the application] may have been the result of oversight on Occoquan's part, and that Occoquan may not have intended to misrepresent information in its applications. USBC § 109.8, however, contains no language requiring that the false statements be intentionally made, and we decline to judicially amend that provision to require such intent.

*Cooper v. Occoquan Land Dev. Corp.,* 8 Va. App. 1, 377 S.E.2d 631, 635 (Va.Ct.App.1989), *reversed on other grounds by,* 239 Va. 363, 389 S.E.2d 464 (Va.1990) (holding county failed to perfect its appeal in a timely manner).

Similarly, the plain language of HRS § 444–17(10) provides for the Board's revocation or suspension of licenses upon a "[m]isrepresentation of a material fact by an applicant in obtaining a license[;]" it does not require an intentional or fraudulent misrepresentation. Instead, it prohibits *any* misrepresentation of a *material* fact. Moreover, the application unambiguously informs the applicant *twice* that any misrepresentation of a material fact will be grounds for the Board to revoke or suspend a license.

We hold that a material misrepresentation, in violation of HRS § 444–17(10), need not be either fraudulent or intentional. We are simply not prepared to "amend" the statute in order to read intent into it. Naturally, the next question that we must answer is whether Appellants' conduct constituted a *material* misrepresentation.

2. *The application's questions regarding the previous debts and bankruptcy of the applicant are material.*

■ Appellants admitted to negligently and carelessly providing false information on their applications. Therefore, Appellants "misrepresented" their answers to the application's questions regarding previous debts and bankruptcy. However, in order for the Board to revoke or suspend a license under HRS § 444–17(10), the misrepresentation must be material.

Section 162(2) of the Restatement of Contracts provides that "[a] misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so." Restatement of Contracts § 162(2). The Restatement further provides that

> [t]he materiality of a misrepresentation is determined from the viewpoint of the maker, while the justification of reliance is determined from the viewpoint of the recipient. The requirement of materiality

---

**6.** Although it is unnecessary to find any of the hearings officer's factual findings clearly erroneous based on our holding in this case, we are not convinced that Appellants were not culpable for the misrepresentation of material facts on their applications. Especially in light of the fact that Kim signed the bankruptcy petition just months earlier, Kim's second failure not to re-read the application and not to insure that his answers were correct amounted to, at the very least, a blatant and reckless disregard for the truth.

may be met in either of two ways. First, a misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent. Second, it is material if the maker knows that for some special reason it is likely to induce the particular recipient to manifest his assent. There may be personal considerations that the recipient regards as important even though they would not be expected to affect others in his situation, and if the maker is aware of this the misrepresentation may be material even though it would not be expected to induce a reasonable person to make the proposed contract.

Restatement of Contracts § 162, cmt. c.

Appellants urge the court to look to the legislative history of HRS Chapter 444. Both of the relevant Senate and House committees reported that "[t]he general intent of this bill is to protect the general public against dishonest, fraudulent, unskillful or unqualified contractors. *To that end this Bill requires application for licensing and the licensing for contractors who meet qualifications required by this Bill ....*" Sen. Conf. Comm. Rep. No. 629, in 1957 Senate Journal, at 617; Hse. Stand. Comm. Rep. No. 618, in 1957 House Journal, at 813 (emphasis added).

Reading the legislative history and the statute in their entirety, the construct of "qualifications" is particularly salient. Specifically, HRS § 444–11 (1993) provides in pertinent part:

No license hereunder shall be issued to:

. . . .

(3) Any person who does not possess a history of honesty, truthfulness, *financial integrity,* and fair dealing; *provided that any person who during the six years priors to application has failed to satisfy an undisputed debt or a judgment relating to services or materials rendered in connection with operations as a contractor shall be presumed not to possess a history of financial integrity ....*

(Emphases added.) Further, HRS § 444–16.5 permits the Board to

require each licensee, applicant, individual or corporate, who is a specialty [or gener-al] contractor to put up bond in the sum of not less than $5,000 executed by the licensee or applicant as principal and by a surety company authorized to do business in the State as surety.

. . . .

The board, in exercising its discretion shall take into consideration the licensee's or applicant's *financial condition* and experience in the field.

(Emphasis and brackets added.) The legislature has also provided for a recovery fund for the owners of private residences who have suffered losses when contracting with licensed contractors, providing up to $12,500 per contract. *See* HRS § 444–26 (1993).

Accordingly, it appears that financial integrity and solvency are "qualifications" an applicant must have in order to obtain a license. At the very least, financial integrity is a factor in determining whether to award a license upon condition of a bond.

Here, questions seven and nine on the Board's application address the financial integrity and solvency of the applicant, by asking about past debts and bankruptcy. The uncontroverted findings adopted by the Board provide that:

[i]n the event that an applicant for a contractor's license answers "Yes" to ... questions [seven and nine], the Board will conduct a further review of the application. Based on the information supplied by the applicant, the Board may request that the applicant appear before the Board to provide additional information about the unpaid bills or bankruptcy proceedings. If the Board has concerns about the applicant's qualifications, the Board may issue a conditional license or even deny the issuance of a license.

Therefore, as a matter of law, an applicant's answers to questions seven and nine on the instant Contractors License Board's application are material.

Kim conceded that his answers to questions seven and nine were incorrect, being carelessly and negligently answered and sub-

mitted. Therefore, Appellants misrepresented material facts in their applications, in violation of HRS § 444–17(10). Accordingly, the circuit court rightly concluded that HRS § 444–17(10) does not require intent and correctly affirmed the suspension of Appellants' licenses and the imposition of the $2,000.00 fine.

## IV. *CONCLUSION*

Based upon the foregoing, we affirm the circuit court's ruling.